EXECUTIVE SQUARE LIMITED PARTNERSHIP *v.* BOARD OF TAX REVIEW OF THE TOWN OF WETHERSFIELD (4920)

HULL, SPALLONE and BIELUCH, Js.

Argued March 12—decision released July 21, 1987

*John F. Harvey, Jr.,* with whom, on the brief, was *Michael Barry,* for the appellant (plaintiff).

*M. Jane Christensen,* with whom, on the brief, was *Robert B. Sweig,* for the appellee (defendant).

BIELUCH, J. The plaintiff appeals from the judgment of the trial court denying the plaintiff relief on appeal from the Wethersfield board of tax review (board). The plaintiff sought a reduction of the assessment for tax purposes of certain improved real estate. See General Statutes § 12-118.[1] The plaintiff claims error in the trial court's finding that the plaintiff failed to establish that the assessment of its land was not the true and actual value of the property. It also claims that the court erred in not following the mandate of General Statutes § 12-63b in its determination of fair market value for rental housing. We find no error.

The trial court made detailed findings of facts from which the following is a brief summary. The plaintiff owns a 240 unit apartment building situated on 8.55 acres of land and located at 100 Executive Square, Wethersfield. The land is located in a planned development—elderly housing zone. By the special permit of the town zoning commission and by covenants and restrictions running with the land in favor of the town, which are recorded on the land records as a condition of that permit, the use of the land is restricted as follows: "the land and any buildings or other structures located thereon shall be designed, used, occupied and maintained as housing for elderly and handicapped persons, as such terms are from time to time defined by Connecticut and United States government programs for the assistance, sponsorship and provision of such

---

[1] General Statutes § 12-118 provides in relevant part: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court."

housing upon the land." The building was constructed by the plaintiff in 1982 and 1983 and financed by a $12,838,000 construction loan from the Connecticut housing finance authority (CHFA). Pursuant to a regulatory agreement with CHFA, the plaintiff agreed that it would limit admission to the project to those persons and families whose incomes do not exceed the limits prescribed from time to time by CHFA, that it would limit itself to a 6 percent return on its initial equity, and that it would not, without prior approval of the CHFA, transfer any part of the project. Although financing was provided by CHFA, a rental subsidy is paid for all tenants by the United States department of housing and urban development under the terms of Section 8 of the Housing Act of 1937, as amended. See 42 U.S.C. § 1437f.

On October 1, 1984, the town assessor valued the property using the following methods of appraisal: (1) replacement cost less depreciation, plus the market value of the land, adjusted for the town's base valuation year, October 1, 1978; and (2) the capitalization of net income based on market rent for similar property, also as of the base year. See General Statutes § 12-63b (a). Under the cost method he calculated the fair market value of the property to be $9,992,952. Under the income approach, he found the fair market value of the property to be $9,900,000. With minor adjustments to these valuations, he applied the uniform rate of 70 percent to arrive at a total assessment of $6,801,500. See General Statutes § 12-62a (b).

The plaintiff thereafter appealed to the Wethersfield board of tax review. After the board made no change in the assessment, the plaintiff then appealed pursuant to General Statutes § 12-118 to the Superior Court, claiming that the assessment of the property determined by the assessor was not the uniform percentage of its true and actual value on October 1, 1984, the

assessment date, but was grossly excessive, disproportionate and unlawful. The plaintiff later amended its appeal to seek a reduction of the identical assessment for October 1, 1985.[2] The trial court concluded that the plaintiff failed to sustain its burden of proof and found the issues for the defendant. The plaintiff then took this appeal.

The plaintiff's first claim is that the trial court failed to apply the proper standard of review for an appeal from a board of tax review. See General Statutes § 12-118. Specifically, the plaintiff claims that it was error for the trial court to conclude that taxable property must be substantially overvalued, as opposed to mere overvaluation, before a taxpayer is entitled to judicial relief.

On appeal from a decision of a board of tax review, "[t]he court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . . " General Statutes § 12-118. "Only when the court finds that the action of the board will result in the payment of an unjust and, therefore, illegal tax, can the court proceed to exercise its broad discretionary power to grant such relief as is appropriate." *Gorin's, Inc.* v. *Board of Tax Review,* 178 Conn. 606, 608, 424 A.2d 282 (1979). In accordance with such review, the law contemplates that a wide discretion is to be accorded to

---

[2] General Statutes § 12-118 provides in further relevant part: "If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court."

assessors. An assessor's valuation should control for taxation purposes unless it is discriminatory or unreasonable. See *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 633 n.8, 438 A.2d 782 (1981); *Federated Department Stores, Inc.* v. *Board of Tax Review,* 162 Conn. 77, 86, 291 A.2d 715 (1971).

"In the appeal to the court, the ultimate question is the ascertainment of the true and actual value of the plaintiff's property. *Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 444, 242 A.2d 777 [1968]; *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 673, 154 A.2d 608 [1959]. If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation. *Connecticut Savings Bank* v. *New Haven,* [131 Conn. 575, 584–86, 41 A.2d 765 (1945)]." *Hutensky* v. *Avon,* 163 Conn. 433, 436–37, 311 A.2d 92 (1972). "Mere overvaluation is enough to justify redress under § 12-118." *Hutensky* v. *Avon,* supra, 436.

Our review of the trial court's memorandum of decision reveals no indication that the trial court used an improper standard of review. The trial court found a variance of 4.8 percent, or $473,000, between the plaintiff's valuation and that of the town assessor. It is clear, however, that the trial court did not find the plaintiff's appraisal credible. Faced with conflicting testimony, the court expressed its belief that the plaintiff's valuation was based upon an approximation of economic rental value that was too low, and a capitalization rate that was too high.

The plaintiff seizes upon the court's statement that "the appraisal process is at best one of approximation and judgment . . . [and] it is at least questionable whether a 4.8 percent variance between the assessor's valuation and an appropriate valuation posited on open market considerations is so substantial as to warrant judicial intervention." The plaintiff characterizes this

statement as suggesting the use of an unspecified variance percentage threshold to determine whether an assessor's overvaluation is substantial enough to warrant judicial relief. The court's statement was a comment on the appraisal process generally. It did not, as the plaintiff claims, indicate a finding that the plaintiff's property was in fact overvalued 4.8 percent, but, rather, that such overvaluation, if proven, was insufficient to warrant judicial interference.

The court held that the plaintiff failed to meet its burden that the assessor's valuation was not the true and actual value of the property. Our review of the record indicates that the town assessor's valuation conformed to the requirements of General Statutes § 12-63b. The trial court's finding that the assessor's valuation represented the present true and actual value of the property was supported by the evidence before it and was not erroneous.

The plaintiff's second claim is that the court erred by not following the mandate of General Statutes § 12-63b in its determination of fair market value for rental housing. General Statutes § 12-63b (a) provides for the following three methods of appraisal to be considered when determining the present true and actual value of real property for tax assessment in the absence of comparable sales: "(1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property." Subsection (b) of that section further provides that "[f]or purposes of subdivision (3) of subsection (a) of this section . . . . [i]n determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract

of lease at the time of such determination." General Statutes § 12-63b (b).[3]

The plaintiff alleges that the federal reimbursement subsidies toward the tenants' rent payments received by it are "not true rental income and, therefore, the total amounts received are not an accurate indicator of what [is] being paid on the open market for comparable [apartments]." The plaintiff contends that the federal subsidies are an "undue stimulus," thereby inflating the aggregate rents above that which could be obtained in a competitive and open market.

---

[3] "[General Statutes] Sec. 12-63b. VALUATION OF RENTAL INCOME REAL PROPERTY. (a) The assessor or board of assessors in any town, when determining the present true and actual value of real property as provided in section 12-63, which property is used primarily for the purpose of producing rental income, exclusive of such property used solely for residential purposes, containing not more than six dwelling units and in which the owner resides, and with respect to which property there is insufficient data in such town based on current bona fide sales of comparable property which may be considered in determining such value, shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property. The provisions of this section shall not be applicable with respect to any housing assisted by the federal or state government except any such housing for which the federal assistance directly related to rent for each unit in such housing is no less than the difference between the fair market rent for each such unit in the applicable area and the amount of rent payable by the tenant in each such unit, as determined under the federal program providing for such assistance.

"(b) For purposes of subdivision (3) of subsection (a) of this section and, generally, in its use as a factor in any appraisal with respect to real property used primarily for the purpose of producing rental income, the term 'market rent' means the rental income that such property would most probably command on the open market as indicated by present rentals being paid for comparable space. In determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination."

The trial court found that the unique circumstances surrounding the plaintiff's property, namely, its restrictions, financing and federal subsidy led it to the conclusion that there is no market that would compare with the housing afforded by the plaintiff's apartments other than Section 8 housing: "According to the evidence, Section 8 housing has its own market and therefore the rental established for the subject property was market rent." The plaintiff's claim that the court failed to apply the provisions of General Statutes § 12-63b is without merit.

There is no error.

In this opinion the other judges concurred.