[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to General Statutes Section 12-118, as supplemented by Public Act 89-231 Section 4,[1] the plaintiff has appealed from the defendant board's decision not to reduce the amount of the assessment placed on his condominium unit for the assessment year beginning October 1, 1989. From the evidence presented and the admissions in the parties' briefs, the facts set forth below have been found.
The plaintiff became a co-owner of 45 Cannon Ridge Drive, Watertown on May 19, 1987 and received full title in January, 1990. The premises is a unit in Artillery Hill, a condominium complex of 125 units. The plaintiff and his co-owner purchased the premises for $150,000.00.[2]
Artillery Hill contains four different types of units described as Trumbull, Taft, Litchfield and Westbury.[3] The plaintiff's property is a Taft unit meaning that it contains a living room with fireplace, dining area, kitchen with built-in range, dishwasher and garbage disposal, two bedrooms, a three-fixture bath and two fixture lavatory on the main level. On the second or loft level, there is an additional bedroom and three-fixture bath. Some of the Taft units have basements and some are built with crawl spaces. The plaintiff's unit has a full unfinished basement with a walkout access to the rear yard. There is a one-car attached garage. Electric heat and central air conditioning are present. Gross livable area above grade is 1,570 square feet of which 1,075 square feet are on the main level and 495 square feet in the loft. The exterior view shows a semi-detached cape style structure. The plaintiff's unit was constructed in 1987.
In 1988, Mr. Petuch, the assessor in Watertown, was engaged in the ten year reevaluation of real estate as mandated by General Statutes Section 12-62 (a). As permitted by Section 12-62 (c), the Town contracted with K.V.S. Information Systems of Amherst, New York, to perform the reevaluation. Section 12-62 (b) requires as part of the reevaluation process that the assessor view by physical observation all real estate in the municipality. Mr. Petuch worked closely with the personnel from K.V.S. On November CT Page 4680 9, 1988 a representative from K.V.S. viewed the outside of the plaintiff's unit but was unable to gain access to the interior. In such a situation, a standard postcard was mailed announcing that a member of the reevaluation team had been at the premises and directing the owner to call the town hall to arrange a convenient time for entry. Thereafter, data mailers were sent concerning interiors and asking for corrections. There was no response to the mailings so that the value ascertained for the unit at 45 Cannon Ridge Drive was accomplished without an interior inspection. Mr. Petuch was familiar with the floor plan for Taft units. A certificate of occupancy had been issued on February 27, 1987. From the issuance of the certificate, Mr. Petuch assumed that the unit was complete. The initial valuation was $167,000.00 later increased to $173,000.00 upon realization that the plaintiff's unit contains a full "walkout" basement. Using the state uniform rate of 70%, General Statutes Section 12-62a(b), meant that the assessed value of the plaintiff's unit on the Grand List of October 1, 1989 was $121,100.00.
Apparently the first occupants of the unit were people from Derby. When the plaintiff commenced his occupancy in August, 1989, the unit was in a state of disrepair. The sink, shower and flooring in the second level bathroom were unfinished; the heating system was faulty; the dishwasher and garbage disposal in the kitchen were inoperative; holes had been made in the sheetrock of the walls; certain doors had been smashed beyond repair and had to be replaced; a toilet seat needed replacement; the carpet throughout the unit was beyond cleaning and had to be replaced; the front step had buckled and needed replacement; there were leaks in the basement; and repainting was needed, inside and outside, but primarily in the interior of the unit. Soon after taking occupancy, the plaintiff began to fix up the unit. The carpet was replaced by September 24, 1989. Other repairs, except the second level bathroom and the painting, appear to have been completed by December 7, 1989. The bathroom and the interior painting were finished early in 1990. The repairs cost $6,400.00. Problems still exist with respect to heat and leaks in the basement.
Dr. Griffiths, the chairman of the board, visited the plaintiff's unit in May, 1990. The visit was only to the first floor and was in connection with the plaintiff's administrative appeal. On the date of the visit, the plaintiff did not mention damage to the unit and Dr. Griffiths did not observe any damage. On June 22, 1990, the board accepted Dr. Griffiths' recommendation that the plaintiff's appeal be denied.
In the proceeding before the court, three appraisers testified and their reports were received as exhibits. Maria Caputo and Ralph Biondi were called by the plaintiff.[4] Mary CT Page 4681
Rosengrant testified on behalf of the board. Findings based on the evidence of the appraisers and their respective valuations are set forth in later sections of this memorandum.
 I.
In determining the validity of a local assessment, the property is first valued by the assessor and then an appeal lies to the board of tax review. General Statutes Section 12-111. A taxpayer who believes that he has been aggrieved by a decision of the board of tax review has, pursuant to General Statutes Section12-118, a further right of appeal to the court where the case is tried de novo. Xerox Corporation v. Board of Tax Review,175 Conn. 301, 303 (1978). On the de novo trial, the taxpayer has the burden to show that he has in fact been aggrieved by the board's action in that his property has been overassessed. Gorin's, Inc. v. Board of Tax Review, 178 Conn. 606, 608 (1979).
General Statutes Section 12-118 provides, inter alia, that the court shall have "power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable." Before exercising the power to grant relief, however, the court must find aggrievement in an overassessment. Gorin's Inc. v. Board of Tax Review, supra. The overassessment need not be substantial, discriminatory or unreasonable to establish aggrievement and to justify relief. A mere overvaluation is sufficient for redress under Section 12-118. O'Brien v. Board of Tax Review, 169 Conn. 129, 130-31 (1979); Hutensky v. Avon, 163 Conn. 433, 436 (1972).
In this case, the board has reminded the court of a statement that appears in several Connecticut decisions. The statement is "[t]he law contemplates that a wide discretion is to be accorded to assessors and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice or illegality result, their opinion and judgment should control in the determination of value for taxation purposes." Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 633 (1981); Connecticut Coke Co. v. New Haven, 169 Conn. 663, 668 (1975); Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77,86 (1971); Burritt Mutual Savings Bank v. New Britain,146 Conn. 669, 675 (1959). But as more recently explained by the Supreme court, the deference that should be given to the assessor's valuation has never been characterized as a presumption in favor of the validity of the assessment which the plaintiff has the burden to rebut. Stamford Apartments Co. v. Stamford,203 Conn. 586, 589 (1987). Moreover, whether the assessor's valuation is entitled to deference depends on the circumstances. In this case, as in Stamford Apartments, no deference is warranted. No CT Page 4682 one from K.V.S. appeared and neither Mr. Petuch nor Dr. Griffiths explained how the figure of $173,000.00 was reached aside from the inclusion of the basement.
 II.
General Statutes Section 12-63 requires all assessors and boards of tax review to consider the present time and actual value of the property as its fair market value and not its value at a forced or auction sale. The ultimate question is the ascertainment of the fair market value of the plaintiff's condominium on October 1, 1989. Hutensky v. Avon, at 437; Executive Square Limited Partnership v. Board of Tax Review,11 Conn. App. 566, 570 (1987). The ultimate question posits an issue of fact to be resolved by weighing the opinions of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value and the court's own general knowledge of factors going to establish value.[5] O'Brien v. Board of Tax Review, supra at 136; Tucker v. Hartford, 15 Conn. App. 513, 517
(1988).
Fair market value means "a value in a market", in a place or under conditions in which there are, or have been, or will be willing sellers and able and ready buyers of property of the same type as that assessed, in which sales are or have been made, or may fairly be expected, in the usual and natural way of business. Xerox Corporation v. Board of Tax Review, supra at 305. The fair market value of a specific property is ordinarily best established by a comparison of market sales, Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-86 (1978), which is the approach to value that was utilized by each of the three appraisers.
In Caputo's opinion, the fair market value of the plaintiff's unit was $122,900.00 Biondi's estimate of value was $149,900.00 and the value given to the premises by Rosengrant was $169,000.00. Each of these appraisals has strengths and weaknesses. Caputo inspected the unit on September 10 and again on September 24, 1989. She, therefore, was in a position to observe the unit in the condition it was in very close to October 1, 1989. Her written appraisal, however, lacks the relevant comparable sales within the Artillery Hill complex that are present in the other two. Biondi examined the unit on December 7, 1989 after most of the repairs were completed. His estimate of $149,900.00 was based on 1400 square feet and without regard to the basement. He thought that a unit with a basement would be worth $5,000.00 more than a unit with a crawl space. Biondi also stated that if the plaintiff's unit contained 1,570 square feet, he would increase his estimate of market value to $156,000.00. In terms of comparable sales, Rosengrant's appraisal was the most thorough. The court sees nothing wrong with her use of sales within CT Page 4683 Artillery Hill for 1988 as well as 1989 nor with her disregard of certain "intercorporate" transactions as not being indicative of sales "in the market". Rosengrant's appraisal is weakened because she never saw the interior of the plaintiff's unit and its condition on October 1, 1989 did not play any role in her assessment of market value.[6]
Although the value of real estate is established over a period of years and is supposed to remain relatively constant, Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 677
(1959), the court's opinion is that the physical condition of the plaintiff's unit, as proven at trial, must be taken into account. in determining market value, all factors which an owner or prospective buyer could reasonably wage in affecting a fair price should be considered. Thaw v. Fairfield, 132 Conn. 173, 177
(1945). Dishwashers, garbage disposals, ranges with hoods, efficient heat pumps and carpet are among the standard features listed for Artillery Hill condominiums. A need to replace or repair some or all of these items as well as general conditions, would affect the price of a unit.
Further, from the testimony of the appraisers, the court finds that the value of units in Artillery Hill in October, 1989 was slightly lower when compared to January, 1988. This finding, of course, does not mean that the value of the plaintiff's unit on October 1, 1989 was the purchase price of $150,000.00 that the plaintiff and his former co-owner paid in 1987. The purchase price, while competent evidence, is not controlling in the court's determination of fair market value. O'Brien v. Board of Tax Review, supra at 136. Based on all the evidence, however, the court is convinced that the assessor's evaluation of $173,000.00 represents an overassessment and, therefore, the plaintiff's aggrievement has been established.
In determining what relief should be ordered, the court has paid particular attention to the sale price of $164,000.00 for unit 125 on August 25, 1989, to the sale price of $174,000.00 for unit 17 on April 29, 1988 and to the sale price of $155,000.00 for unit 41 on January 28, 1988. All three units are of the Taft-type but the first two have crawl spaces rather than a full basement whereas the last had an unfinished second level. The decline in market value is seemingly exhibited by the difference in the amounts paid for units 125 and 17. The court considers the price received for unit 125 to be the most competent indicator of fair market value. To this sale price of $164,000.00, the court adds $5,000.00 for the full basement at the plaintiff's unit and subtracts $10,000.00 for the physical condition of the unit as of October 1, 1989. "When confronted with conflicting evidence as to valuation, the [court] may properly conclude that under all of the circumstances a compromise figure most accurately reflects fair CT Page 4684 market value." Whitney Center, Inc. v. Hamden, 4 Conn. App. 426,430 (1985). The fair market value of the plaintiff's unit, as of October 1, 1989 was $159,000.00.
Applying the uniform rate of 70% results in an assessed value for tax purposes of $111,300.00. The board is directed to make the appropriate changes in the Grand List of October 1, 1989.
BARNETT, J. ENDNOTES