[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to General Statutes Section 12-118, as supplemented by Public Act 89-231, Section 4, the plaintiffs have appealed from defendant board's decision not to reduce the amount of the assessment placed on their residence at 44 Crestview Drive in Watertown for the assessment years beginning October 1, 1989. From the evidence presented, the facts set forth below have been found.
The plaintiff, Stephen P. Signore, with his wife, A. Hayden CT Page 8846 Signore, became co-owner of 44 Crestview Drive, Watertown on June 26, 1979. The Signores purchased the premises for $61,900. On October 18, 1983, A. Hayden Signore transferred her interest in the property by Quit Claim Deed to the plaintiff who was, on the date of reassessment, and is presently sole owner of the property.
Plaintiff's property is a single family ranch-style home with three bedrooms and two baths. The basement is unfinished and consists partially of a two-car garage. Gross livable area is 1,388 square feet. The house is located on a 2.82 acre lot. The majority of the site remains in a natural state with the exception of a lawn area around the dwelling and a paved driveway to the road. The lot is bisected in an east-west direction by a Connecticut Light and Power (hereafter "CLP") easement where transmission wires are located. CLP has a 300+ foot right of way for access to the transmission lines.
In 1988, Mr. Petuch, the assessor in Watertown was in the process of conducting the ten year revaluation of property as mandated by General Statutes Section 12-62 (a). As permitted by Section 12-62 (c), the town contracted with K.V.S. Information Systems of Amherst, New York to perform the revaluation. Section 12-62 (b) requires as part of the revaluation process that the assessor view by physical observation all real estate in the municipality. On February 8, 1988 a representative from K.V.S., with whom Mr. Petuch worked closely, viewed the subject property. The information collected was placed on a field property card which was later transferred to a permanent residential property card. This procedure was used for all properties throughout the Town. The valuation, based on the collected information, was $89,400 for the land and $80,700 for replacement of the building, or a total of $170,100. Using the state uniform rate of 70%, General Statutes Section 12-62a(b), meant that the assessed value of the plaintiff's property on the Grand List of October 1, 1989 was $119,070.00.
Plaintiff appealed to the defendant Board of Tax Review claiming the valuation was excessive. However, on June 22, 1990, the Board denied the appeal and no change was made in valuation. Appeal to this court followed.
At the hearing, appraisers were called to testify by each party and their reports were received as exhibits. Plaintiff called Louis Gallulo and Mary Rosengrant testified on behalf of the Board. Findings based on the evidence of each appraiser and his or her respective valuations are set forth later in this memorandum.
I. CT Page 8847
In determining the validity of the local assessment, the property is first valued by the assessor and then an appeal lies to the board of tax review. General Statutes Section 12-111. A taxpayer who believes that he has been aggrieved by a decision of the board of tax review has, pursuant to General Statutes Section 12-118, a further right of appeal to the court where the case is tried de novo. Xerox Corporation v. Board of Tax Review,175 Conn. 301, 303 (1978). On the de novo trial, the taxpayer has the burden to show that he has in fact been aggrieved by the board's action in that his property has been overassessed. Gorin's, Inc. v. Board of Tax Review, 178 Conn. 606, 608 (1979).
General Statutes Section 12-118 provides, inter alia, that the court shall have "power to grant such relief as justice and equity appertains, upon such terms and in such manner and form as appear equitable." Before exercising the power to grant relief, however, the court must find aggrievement in an overassessment. Gorin's, Inc. v. Board of Tax Review, supra. The overassessment need not be substantial, discriminatory or unreasonable to establish aggrievement and to justify relief. A mere overvaluation is sufficient for redress under Section 12-118. O'Brien v. Board of Tax Review, 169 Conn. 129, 130-131 (1979); Hutensky v. Avon, 163 Conn. 433, 4365 (1972).
The Connecticut Supreme Court has established that an assessor and board of tax review enjoy a liberal discretion in determination of statutory market value and that value should control "unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result." Burritt Mutual Savings Bank v. New Britain,146 Conn. 669, 675. However, the deference that should be given to the assessor's valuation has never been characterized as a presumption in favor of the validity of the assessment which the plaintiff has the burden ro rebut. Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589 (1987). Moreover, whether the assessor's valuation is entitled to deference depends on the circumstances. In this case even the appraisers called by defendant Board disagreed with the assessor's valuation.
 II.
General Statutes Section 12-63 requires all assessors and boards of tax review to consider the present time and actual value of the property as its fair market value and not its value at a forced or auction sale. The ultimate question is the ascertainment of the fair market value of the plaintiff's property on October 1, 1989. Hutensky v. Avon, supra at 437; Executive Square Limited Partnership v. Board of Tax Review, 11 Conn. App. 566,570 (1987). The ultimate question posits an issue of fact to be resolved by weighing the opinions of the appraisers and the CT Page 8848 claims of the parties in light of all the circumstances in evidence bearing on value. O'Brien v. Board of Tax Review, supra at 136; Tucker v. Hartford, 15 Conn. App. 513, 517 (1988).
Fair market value means "a value in a market", in a place or under conditions in which there are or have been, or will be willing sellers and able and ready buyers of property of the same type as that assessed, in which sales are or have been made, or may fairly be expected, in the usual and natural way of business. Xerox Corporation v. Board of Tax Review, supra at 305. The fair market value of a specific property is ordinarily best established by a comparison of market sales, Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-86 (1978), which is the approach to value that was utilized by both appraisers.
In Gallulo's opinion, the fair market value of plaintiff's property was $125,000. Rosengrant's value was $150,000. Mr. Gallulo, in arriving at the aforementioned value used three comparable sales, one of which was 56 Westview Drive, the property next door to the subject property. This sale closed in January of 1990. This was also one of seven comparisons used by Ms. Rosengrant. Mr. Gallulo attributes the thirty thousand difference in value between 56 Crestview and 44 Crestview to the fact that the presence of the power lines would not only affect utility of a good portion of the property but also would affect aesthetics. Rosengrant's appraisal appears more thorough in that she not only compared seven properties but also generally assessed the effect of power lines on sales in the Meadow Crest Subdivision. The results of that research indicate that there was very little difference in purchase price for those homes built on lots with power lines and CLP easements, as those without. The lot sizes of those with power lines were generally somewhat larger, however. With respect to the subject property, then, although it sits on 2.83 acres as compared to 1.04 acres at 56 Crestview, Rosengrant gave no added value for the additional acre because of the power lines.
Defendant's position is that the value of the subject property should remain at $170,000, since the application of a 50% factor by the assessor for the excess land was reasonable. Plaintiff's appraiser values 44 Crestview at $125,000. Rosengrant's value is $150,000. In determining what relief should be ordered, the court has paid particular attention to the sale price of $155,000 for 56 Crestview Drive and the research done by Rosengrant regarding the Meadow Crest Subdivision. The court considers the price of 56 Crestview Drive to be the most competent indicator of fair market value. No further value for the excess land as to 44 Crestview Drive should be added, despite the assessor's opinion that a 50% factor should be added. "When confronted with conflicting evidence as to valuation, the [court] CT Page 8849 may properly conclude that under all of the circumstances a compromise figure most accurately reflects fair market value." Whitney Center, Inc. v. Hamden, 4 Conn. App. 426, 430 (1985). The fair market value of plaintiff's unit, as of October 1, 1989 was $150,000.
 III.
Applying the uniform rate of 70% results in an assessed value for tax purposes of $105,000. The board is directed to make the appropriate changes in the Grand List of October 1, 1989.
SANTOS, J.