HEATHER LYN LIMITED PARTNERSHIP *v.*
TOWN OF GRISWOLD ET AL.
(13432)

FOTI, SCHALLER and FREEDMAN, Js.

Argued March 14—decision released June 13, 1995

*Richard J. Duda,* with whom was *Mary Beth Duda,* for the appellants (defendants).

*Richard J. Pascal,* with whom, on the brief, was *Lloyd L. Langhammer,* for the appellee (plaintiff).

SCHALLER, J. The defendants, the town of Griswold and the borough of Jewett City, appeal from the judgment of the trial court in favor of the plaintiff, which was rendered on the plaintiff's complaint brought pursuant to General Statutes § 12-117a[1] for a reduction in the amount of the assessment and tax on a parcel of real property. The principal issue in this appeal is whether the trial court improperly reduced an assessment on the plaintiff's real property by adopting an appraisal method that was invalid as a matter of law. We reverse the judgment of the trial court.

The trial court found the following facts. On July 1, 1987, the plaintiff purchased an apartment complex located at the corner of Brown Avenue and Russell Street in the town of Griswold. Thereafter, the plaintiff declared the twenty-six units as condominiums.

The plaintiff furnished the assessor of the town of Griswold with all of the information relevant to the assessment of the property. The assessor implemented, as of October 1, 1992, and October 1, 1993, a valuation of the condominium units for the town of Griswold at 70 percent of their alleged actual valuation. The plaintiff appealed to the town board of tax review for a reduction of the assessments made, but the board made no changes. On June 11, 1993, the plaintiff commenced this action against the defendants.

---

[1] General Statutes § 12-117a provides in pertinent part: "APPEALS FROM DECISIONS OF BOARDS OF TAX REVIEW CONCERNING ASSESSMENT LISTS FOR ASSESSMENT YEARS COMMENCING OCTOBER 1, 1989, TO OCTOBER 1, 1992. Notwithstanding the provisions of sections 12-118, 12-121aa and 12-121bb, any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, or October 1, 1994, may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . ."

The defendant town of Griswold conducted a revaluation pursuant to General Statutes § 12-62 with the resulting values assessed on all property as of October 1, 1992. The plaintiff's premises were assessed at $37,450 per unit, 70 percent of $53,000, which the board determined to be the fair market value of each unit. Since the conversion to condominiums, six units have been sold. At the time of trial, all units were either available for rent or occupied as rental units. No units have been sold since October 1, 1992. A prior tax appeal concerning the premises with respect to the tax lists of October 1, 1988, October 1, 1989, and October 1, 1990, went to judgment on December 17, 1990. The trial court in that case found the true and actual fair market value of each unit to be $21,600.

At trial, the plaintiff's expert, Chris S. Buckley, testified that the fair market value of the twenty-six units appraised as residential condominiums for purchase by a single purchaser was $426,000; when appraised as residential apartments, the value was $920,000. Buckley employed a method of appraisal, which he called "the discounted cash flow developmental method of income capitalization," utilizing projections of sales for a period of eight years less expenses and discounting to a present value estimate. By that method, the fair market value of each unit was $16,385. An alternative value as rental apartments was also estimated using the "income capitalization approach" over a period of eight years. The trial court found Buckley's appraisal method "inherently credible when it relates the fair market value per unit to be $16,385 . . . based on the discounted cash flow analysis." The trial court, however, gave "considerable weight" to the 1990 judgment in the prior tax appeal, and found the present fair market value of each unit to be $21,600, a figure identical to the value found by the trial court in 1990.

It is well established that "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 153, 527 A.2d 679 (1987). The credibility and the weight of expert testimony is judged by the same standard, and the trial court "is privileged to adopt whatever testimony [the court] reasonably believes to be credible." (Internal quotation marks omitted.) *Transportation Plaza Associates* v. *Powers*, 203 Conn. 364, 378, 525 A.2d 68 (1987). On appeal, we do not retry the facts or pass on the credibility of witnesses. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988).

"The trial court was presented with conflicting testimony as to the value of the property, and concluded that the report and testimony of the plaintiff's expert was the most credible. In any assessment case in which the trial court is confronted with conflicting appraisal methods, it is a proper function of the court to give credence to one expert over the other. *Connecticut Coke Co.* v. *New Haven*, 169 Conn. 663, 666, 364 A.2d 178 (1975)." *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 99–100, 626 A.2d 1292 (1993). The conclusions reached by the trial court must stand "unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law." (Internal quotation marks omitted.) *Hartford* v. *Tucker*, 15 Conn. App. 513, 517–18, 545 A.2d 584, cert. denied, 209 Conn. 807, 548 A.2d 444 (1988). We will not disturb the trial court's adoption of the plaintiff's valuation of the property, therefore, unless the appraisal was legally invalid.

General Statutes § 12-63b (a)[2] provides for the following three methods of appraisal to be considered when

---

[2] General Statutes § 12-63b (a) provides: "The assessor or board of assessors in any town, when determining the present true and actual value of

determining the present true and actual value of real property for tax assessment in the absence of comparable sales: "(1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property."

At trial, the plaintiff's expert explained that he had used an income capitalization approach, the discounted cash flow method, using projected sales over eight years to obtain the fair market value of the property for October 1, 1992, and October 1, 1993. "The discounted cash flow method is an accepted method for determining the present value of real property. The Appraisal of Real Estate (10th Ed. 1992) pp. 420–21; Dictionary of Real Estate Appraisal (2d Ed. 1984) p. 94." *Newbury Commons Ltd. Partnership* v. *Stamford,* supra, 226 Conn. 100. "The income capitalization approach to value consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and

real property as provided in section 12-63, which property is used primarily for the purpose of producing rental income, exclusive of such property used solely for residential purposes, containing not more than six dwelling units and in which the owner resides, and with respect to which property there is insufficient data in such town based on current bona fide sales of comparable property which may be considered in determining such value, shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property. The provisions of this section shall not be applicable with respect to any housing assisted by the federal or state government except any such housing for which the federal assistance directly related to rent for each unit in such housing is no less than the difference between the fair market rent for each such unit in the applicable area and the amount of rent payable by the tenant in each such unit, as determined under the federal program providing for such assistance."

convert these benefits into an indication of present value." Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992) p. 409.

To determine if projected sales is an appropriate factor to be considered in determining value pursuant to the income capitalization method, we look to the plain language of § 12-63b (b).[3] "The objective of statutory construction is to give effect to the intended purpose of the legislature. *State* v. *Delafose*, 185 Conn. 517, 521, 441 A.2d 158 (1981). . . . *Forsyth* v. *Rowe*, 226 Conn. 818, 828, 629 A.2d 379 (1993). Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction . . . . *All Brand Importers, Inc.* v. *Dept. of Liquor Control*, 213 Conn. 184, 195, 567 A.2d 1156 (1989)." (Internal quotation marks omitted.) *Haesche* v. *Kissner*, 229 Conn. 213, 223, 640 A.2d 89 (1994).

"Section 12-63b (a) (3) requires the use of '*market rent*' as the indicator of income. . . . '[T]he term "market rent" means the rental income that such property would most probably command on the open market as indicated by *present rentals being paid for comparable space*. In determining market rent the assessor shall consider the *actual rental income* applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination.' (Emphasis added.) General Statutes § 12-63b (b)." *First Bethel Associates* v. *Bethel*, 231

---

[3] General Statutes § 12-63b (b) provides: "For purposes of subdivision (3) of subsection (a) of this section and, generally, in its use as a factor in any appraisal with respect to real property used primarily for the purpose of producing rental income, the term 'market rent' means the rental income that such property would most probably command on the open market as indicated by present rentals being paid for comparable space. In determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination."

Conn. 731, 739–40, 651 A.2d 1279 (1995). The statute is clear and unambiguous in providing that market rent is the factor to be considered in a determination of value under the income capitalization method. Future projected sales is not contained in the statute as a factor for consideration.

The trial court purported to adopt the income capitalization method of appraisal conducted by the plaintiff's expert. Despite evidence of the rental income from the units not yet sold, the court chose to accept the plaintiff's expert's determination of value based on projected sales over the next eight years. "Although valuation of some properties may appropriately involve more than one single theory of valuation, and appraisals may be made which combine the cost and income approaches; *Xerox Corporation* v. *Ross*, 71 App. Div. 2d 84, 421 N.Y.S.2d 475 (1979); such was not done in this case." *Whitney Center, Inc.* v. *Hamden*, 4 Conn. App. 426, 428, 494 A.2d 624 (1985). The trial court concluded that the approach it was adopting was the income capitalization method pursuant to § 12-63b (a) (3). What it actually used was a hybrid between the income capitalization method and the sales method pursuant to General Statutes § 12-63. The trial court explicitly rejected the comparable sales approach as too speculative, but then allowed the plaintiff to speculate even further by measuring value using projected sales over eight years.

The function of the trial court is to determine the "true and actual value of the plaintiff's property. *Dickau* v. *Glastonbury*, 156 Conn. 437, 441, 444, 242 A.2d 777 [1968]; *Burritt Mutual Savings Bank* v. *New Britain*, 146 Conn. 669, 673, 154 A.2d 608 [1959]." (Internal quotation marks omitted.) *Executive Square Ltd. Partnership* v. *Board of Tax Review*, 11 Conn. App. 566, 570, 528 A.2d 409 (1987). We are persuaded, on this record, that the trial court improperly applied the law in correcting the town's valuation of the plain-

tiff's property. The plain language of §§ 12-63b (a) (3) and 12-63b (b) demonstrates that the trial court incorrectly adopted and applied an appraisal method conducted under the income capitalization method that relied on future sale of units as a measure of value.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

