[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is presented to the court as an appeal from the findings and determinations of the Board of Tax Review of the Town of East Haven.
From the credible evidence adduced at trial, the court finds the following:
The applicant is the owner of a parcel of land known as 97-119 Hemingway Avenue, East Haven.
On October 1, 1991, the Assessor of the Town of East Haven placed a One Hundred (100%) percent value on the subject property in the amount of SIX MILLION FOUR HUNDRED NINETY FOUR THOUSAND ONE HUNDRED ($6,494,100.00) DOLLARS.
The Assessor determined that all property should be liable for taxation at Seventy (70%) percent of its One Hundred (100%) percent valuation on that assessment date, which for this property is FOUR MILLION FIVE HUNDRED FORTY THREE THOUSAND SEVEN HUNDRED SEVENTY ($4,543,770.00) DOLLARS (assessment value).
The Board of Tax Review of the Town of East Haven exists pursuant to Connecticut General Statutes Section 12-111 and is authorized to hear appeals from tax assessments. CT Page 6178
Trolley Commons Limited Partnership, or its attorney or agent, duly appealed to the Board of Tax Review of the Town of East Haven, claiming to be aggrieved by the action of the assessor, appeared before said Board and presented evidence to it, and offered to be sworn and answer all questions concerning the property, but the Board made no changes in the assessment value.
The applicant brought this action within two months of the action of the Board of Tax Review.
The property was assessed at FOUR MILLION FIVE HUNDRED FORTY THREE THOUSAND SEVEN HUNDRED SEVENTY ($4,543,770.00) DOLLARS on the lists of October 1, 1991 and October 1, 1992.
The applicant seeks a reduction in its property assessment and a corresponding refund of excess taxes paid.
At issue is the determination of fair market value and the method used to obtain same.
Section 12-63 of the General Statutes requires the assessor and the Board of Tax Review to set the value of property at its fair market value. Further, the statute designates present true and actual value as fair market value, and not the value at a forced or auction sale.
The words "market value", "actual valuation", "fair market value" and similar terms "`mean a value in a market in a place or in conditions in which there are, or have been or will be within a reasonable time, willing sellers and able and ready buyers of property like that to be assessed.'" Federated Department Stores,Inc. v. Board of Tax Review, 162 Conn. 77, 87 (1971), quoting from Underwood Typewriter Co. v. Hartford, 99 Conn. 329, 336
(1923).
Section 12-63b, subsection (a), General Statutes sets forth three accepted methods of estimating true and actual value which may be used for the assessment of rental income producing property. It provides in pertinent part that:
 The assessor, or board of assessors in any town, when determining the present or true and actual value of real property as provided in section 12-63, which property is used CT Page 6179 primarily for the purpose of producing rental income, and with respect to which property there is insufficient data in such town based on current bona fide sales of comparable property which maybe considered in determining such value, shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property, and (3) capitalization of net income based on market rent for similar property.
The assessor of the Town of East Haven through its assessor and the applicant each used the income capitalization method.
On appeal, it is a question of fact for the trier as to whether the method used for valuation appears in reason and logic to accomplish a just result. National Folding Box Co. v. NewHaven, 146 Conn. 578, 588.
An expert witness for the applicant and one for the respondent testified as to the validity of their respective methods of estimating value and pointed out problems involved in using a different approach. The trial court, however, can accept or reject the testimony of expert witness offered by one party or the other in whole or in part. Midway Green Corporation v. Boardof Tax Review, 8 Conn. App. 440, 443 (1986). The court can accept or reject portions of each appraiser's testimony and arrive at a compromise figure as most accurately reflecting fair market value. Whitney Center, Inc. v. Hamden, 4 Conn. App. 426, 430
(1985).
In an appeal from a Board of Tax Review, the applicant has the burden to show that he is aggrieved by the Board's decision, namely, that his property has been overassessed. Gorin's Inc. v.Board of Tax Review, 178 Conn. 606, 608 (1979).
When determining whether or not the property has been overvalued, "[t]he law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially CT Page 6180 overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes." Stamford Apartments Co. v. Stamford,203 Conn. 586, 589 (1987), quoting from Federated Department Stores,Inc. v. Board of Tax Review, 162 Conn. 77, 86 (1971), quotingBurritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 675
(1959).
Since the process of estimating value of property is one of approximation and judgment, assessors have considerable discretion in valuing property for tax purposes. Burritt MutualSavings Bank v. New Britain, supra, 675.
"[P]roper deference must be given to the judgment and experience of assessors." Connecticut Coke Co. v. New Haven,169 Conn. 663, 668 (1975). However, such deference is not a presumption in favor of the validity of the assessment which it is the taxpayer's burden to rebut. Stamford Apartments Co. v.Stamford, supra, 589. Only if the court finds that the property has been overvalued by the assessors can it exercise its power to correct the valuation. Hutensky v. Avon, 163 Conn. 433, 437
(1972).
When the taxpayer is found to be aggrieved by the decision of the Board of Tax Review, namely, that its decision will result in the payment of an excessive, unjust and therefore illegal tax, the court may then proceed to exercise its broad discretionary power to grant such relief as is appropriate; Gorin's, Inc. v.Board of Tax Review, supra, 608; and the court finds such aggrievement in the case at bar.
The assessor testified that he was unable to obtain the submission of the rental income of the project, as provided in Section 12-63c of the General Statutes. Cf. Heather Lyn Ltd.Partnership v. Griswold, 38 Conn. App. 158, 159. Mr. LaGreca, the Town's appraiser, termed the appraisal as "retrospective appraisal". Further, no data was available prior to May, 1992.
As noted supra, both of the appraisers used the income capitalization method to arrive at their respective figures. The applicant so reached the sum of $3,800,000 as his valuation. The Town's appraiser's figure was $5,300,000.
Mr. Durocher, the applicant's appraiser, explained how he reached his conclusion. A study was taken of the market rents, CT Page 6181 using the comparable complexes. Then, based upon the comparables and the actual rents paid for the space, he developed a fair market rent average.
1 Bedroom Flat — $550.00
2 Bedroom Flat — 625.00
2 Bedroom Flat — 685.00
Mr. LaGreca, on the other hand, stated in his report: "market rents from the Multiple Listing Service for 1990-1991 were utilized." p. 46.
The method or approach considered by the expert for the Town is the income capitalization approach. As defined in the narrative appraisal report, that approach consists of "[a] set of procedures in which an appraiser derives a value indication for income-producing property by converting anticipated benefits into a value estimate. This conversion is accomplished by capitalizing a single year's income expectancy or an annual average of several years' income expectancies at a market derived capitalization rate or a capitalization rate that reflects a specified income pattern." This is known as "the discounted cash flow method."
 "The discounted cash flow method is an accepted method for determining the present value of real property. The Appraisal of Real Estate (10th Ed. 1992) pp. 420-21; Dictionary of Real Estate Appraisal (2d Ed. 1984) p. 94." Newbury Commons Limited Partnership v. Stamford, supra, 226 Conn. 100. "The income capitalization approach to value consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and convert these benefits into an indication of present value." Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992) p. 409" Heather Lyn Ltd. Partnership, p. 163.
 "For purposes of subdivision (3) of subsection (a) of this section and, generally, CT Page 6182 in its use as a factor in any appraisal with respect to real property used primarily for the purpose of producing rental income, the term `market rent' means the rental income that such property would most probably command on the open market as indicated by present rentals being paid for comparable space. In determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination." Sec. 12-63b(b) C.G.S.
The list of rent comparables used by the Town's appraiser (Ex. D) is included. There are 133 listings, and would be subject such to variations in with asking prices, conditions, and location.
Mr. LaGreca reported the following rentals:
1 B.R. $606 (flat)
2 B.R. $685 (flat)
2 TH $750
However, he was provided with a rent roll (Ex. D) showing the rentals being as follows:
1 B.R. $500-600
2 B.R. $565-645
2 TH $620-750
Further, 20 of the units were vacant.
 "Section 12-63b(a)(3) requires the use of `market rent' as the indicator of income. . . . `[T]he term "market rent" means the rental income that such property would most probably command on the open market as indicated by present rentals being paid for comparable space. In determining market rent CT Page 6183 the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination.' (Emphasis added.) General Statutes § 12-63b(b)." First Bethel Associates v. Bethel, 231 Conn. 731, 739-40, 651 A.2d 1279 (1995). The statute is clear and unambiguous in providing that market rent is the factor to be considered in a determination of value under the income capitalization method." Heather Lyn Ltd. Partnership, p. 163, 164.
The court gives very little weight to the use of market data supplied by the Town's appraiser.
Mr. Durocher enclosed five pages to detail the reasonable and necessary expenses of the project. Further, his estimate of expenses is checked out against the tabulation of the Institute of Real Estate Management. Therein, it was determined that the expenses fell in the median of expenses.
Mr. LaGreca showed nothing by way of justification. Since the numbers in the table (Trolley Commons 10 year Cash Flow Analysis, October 1, 1991) cannot be justified, his finding under the cash flow analysis must fall.
This court finds the value of the property as of October 1, 1991 to be, FOUR MILLION TWO HUNDRED THOUSAND ($4,200,000.00) DOLLARS, or an assessed valuation of TWO MILLION NINE HUNDRED FORTY THOUSAND ($2,940,000.00) DOLLARS, and it is fur THOUSAND ($2,940,000.00) DOLLARS, and it is further adjudged that the Board of Tax Review correct the assessment against the applicant accordingly.
And it is further adjudged that the applicant recover of the defendant Town, the difference between the amount of the taxes paid on such property and the correct tax computed on the valuation determined herein, together with interest from the date of such payment to the date of refund. The plaintiff may tax as costs the sum of $500 for the appraisal.
Robert P. Burns, Judge CT Page 6184