[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 1401
These two cases are municipal tax appeals taken from the decisions from the board of tax review of the town of Farmington. both cases arise out of the common ownership of individual condominium units located at the condominium development known as Farmington Edge. Although Farmington Edge Condominiums have been approved for one hundred and sixty dwelling units, one hundred twenty-eight dwelling units have been constructed. As of October 1, 1994, sixty units had been sold to individual home owners, or "end users." Five units are owned by persons associated with Rejean Carrier. Of the remaining unsold units, ReJean Carrier is the owner of forty-five unsold units and Y.C. Ventures, Inc. is the owner of eighteen unsold dwelling units. Rejean Carrier acquired the forty-five units on February 18, 1994, from the condominium declarant, Farmington Edge Estates, for the price of $3,134,555. Y.C. Ventures, Inc. acquired the eighteen units through three separate transactions between November 30, 1989, and October 21, 1991, for various considerations. In addition to the forty-five condominium dwelling units owned by ReJean Carrier, ReJean Carrier also acquired an adjoining parcel of land totalling 6.849 acres from Farmington Edge Estates on February 18, 1994, for $320,000. The 6.849 acres has approval for future construction of thirty-two condominium dwelling units. The Farmington Edge Estates has withdrawn the 6.849 acre parcel from the condominium association. Of the forty-five condominium dwelling units owned by ReJean Carrier, forty-four units were rented as of October 1, 1994. Y.C. Ventures, Inc., as of October 1, 1994, had rented seventeen of the eighteen condominium dwelling units owned by it.
On October 1, 1994, the town of Farmington conducted its statutorily mandated decennial reassessment of all properties located within the town. The Farmington assessor, on October 1, 1994, assessed each individual dwelling unit at Farmington Edge as a single unit. The range of assessments on the forty-five units owned by ReJean Carrier and the eighteen units owned by Y.C. Ventures ran from a low of $60,480 to a high of $85,090. This translates into a fair market value of the lowest unit at $86,400 and a high unit value of $121,557.
Although the plaintiffs appealed the assessment on each individual condominium dwelling unit to the board of tax review and then appealed the denial by the board of tax review as to CT Page 1402 each individual condominium unit, the plaintiffs treat the forty-five condominium dwelling units and the eighteen condominium units as two separate bulk parcels for valuation purposes.
The plaintiffs' expert real estate appraiser, Daniel L. Morgan, determined that the highest and best uses of the subject forty-five unit parcel and the eighteen unit parcel were continued uses as rental apartment complexes, with a long term sell-out of individual units to end-users. Morgan determined that the total fair market value of the forty-five condominium dwelling units, assuming no future unit sales as of October 1, 1994, was $3,100,000. Morgan further calculated the market value of the forty-five units, taking into account future unit sales at $3,300,000 as of October 1, 1994. Morgan placed a market value as of October 1, 1994, on the eighteen condominium dwelling units owned by Y.C. Ventures at $1,250,000 assuming no future sales, and $1,350,000 assuming future unit sales to end users. Morgan did not give an opinion of value as to each individual unit because he considered the multiple dwelling units owned by each plaintiff to be two apartment rental complexes.
Using the income capitalization approach, Morgan determined that the estimated initial gross sellout of the forty-five units over a period of seven and a half years would amount to a total of $4,335,000. Morgan forecasted that in the first year of operation, the net operating income, after equitable real estate taxes attributable to the sixty-three units, would be $300,086. Morgan selected a capitalization rate of fourteen percent as appropriate for the subject forty-five units considered as a condominium sellout project. Using the 14% capitalization rate under the sellout scenario, with a projected total income of the subject forty-five units for the seven and a half year period of time of $5,387,017, Morgan arrived at a fair market value of $3,300,000 using the discounted cash flow method.
Morgan used the same process with regard to the eighteen units owned by Y.C. Ventures to arrive at a fair market value of $1,350,000 using the discounted cash flow method.
With respect to the 6.849 acre parcel of land owned by Rejean Carrier, Morgan determined the fair market value of the land using the sales comparison approach. Morgan's search for comparables led him to use transfers of land proposed for the construction of multifamily dwelling units. Four land sales were CT Page 1403 used by Morgan.
Based on the four comparable sales, Morgan determined that the comparable market value of the land price per approved condominium unit was $7,500. Since Morgan concluded that the subject 6.849 acres of land was approved for the construction of thirty-two units, he determined that at $7,500 per unit site, the market value of the subject 6.849 acres was $240,000 as of October 1, 1994.
Morgan's determination of the value of the 6.849 acres at $240,000 flies in the face of the value placed on this property by the plaintiff himself when he purchased the property from his controlled corporation on February 18, 1994, for $320,000. A review of the four comparable sales used by Morgan to arrive at $240,000 fails to persuade us that Rejean Carrier has sustained his burden of proof to show that the assessment of $297,220, placed on the 6.849 acre parcel, just months after the sale, was excessive.
As to the sixty-three units, the controlling issue is whether condominium dwelling units constructed as single family units, may, under the circumstances in these two cases, be combined by an owner and valued for tax purposes based upon the owner's use of them as rental units.
The Connecticut Condominium Act, and in particular, General Statutes § 47-79(a) requires that each condominium unit shall, for all purposes, be considered as a separate parcel of real property, and shall be separately assessed and taxed. Section 47-204(b), a provision of the Common Interest Ownership Act, provides that if there is any unit owner other than a declarant, each unit constitutes a separate parcel of real property and each unit shall be separately taxed and assessed.
Consistent with the Connecticut Condominium Act and Common Interest Ownership Act, the assessor for the town of Farmington assessed the subject sixty-three condominium units as sixty-three separate parcels of land. The Farmington assessor determined the fair market value of the individual condominium units by using comparable sales of other condominium units.
The plaintiff's key argument in this appeal is that the highest and best use of the sixty-three units was for rental income purposes; and therefore the valuation of the sixty-three CT Page 1404 units should not have been based on comparable sales of individual units, but rather on one of the three methods of appraisal recited in General Statutes § 12-63b. Section 12-63b
requires an assessor, when there is insufficient data of bona fide sales of comparable property for the assessor's consideration, to use the income method to appraise rental income property and to consider the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property. See Heather Lynn Ltd. Partnership v.Griswold, 38 Conn. App. 158, 162, 659 A.2d 740 (1995).
The town of Farmington properly points out that there are numerous bona fide sales of comparable condominium units to consider in determining the value of the plaintiffs' condominium units. As we originally noted, as of October 1, 1994, sixty units at Farmington Edge had been sold to individual home buyers over the past six years. Not one of the sales of the individual units supports the valuation claimed by the plaintiffs. Morgan's compilation of sales data shows that the sale prices of twenty Farmington Edge condominium units sold between 1992 and 1995 ranged from $89,000 to $134,000. The town's valuation of these same units ranged from $86,400 to $122,620.
Where there are sufficient comparable sales, the market approach is the best test in determining fair market values.Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 674,154 A.2d 608 (1959). Only where market sales are insufficient are other methods required. Id. In these two cases, it is clear that sufficient market sales do exist from which to determine fair market value of condominium units in Farmington.
The plaintiffs focus on the issue of highest and best use of the subject property and whether the assessor was required to consider the property's rental history in this context. As the plaintiffs correctly point out, the highest and best use of real property is a necessary element in determining the fair market value of property. Carol Management Corp. v. Board of Tax Review,228 Conn. 23, 34, 633 A.2d 1368 (1993). The concept of "highest and best use," "`chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate.'" Id., quoting State NationalCT Page 1405Bank v. Planning Zoning Commission, 156 Conn. 99, 101,239 A.2d 528 (1968). "The purpose of determining the highest and best use of property as improved is to identify the use that is expected to produce the greatest value and to help the appraiser select comparable properties." Appraisal Institute, The Appraiser of Real Estate (10th Ed. 1992), p. 294.
The plaintiffs contend that because they have purchased sixty-three condominium units and are now renting these units, the highest and best use of these units is for rental income. In support of this contention, the plaintiffs cite The Appraisal of Real Estate, p. 132, for the proposition that appraisers usually apply the income approach when valuing an entire condominium project, whether newly constructed or a conversion. However, the subject properties are not an entire condominium complex. When valuing individual condominium units, appraisers generally use the market sales approach because "[r]ecent sales of units of comparable size, location, and quality are the best indicators of value." The Appraisal of Real Estate, supra, p. 132. What we have here is a condominium complex that has proceeded to the point where almost half of the constructed units in the complex have been sold to single end users. It appears that the plaintiffs seek a determination of the highest and best use of sixty-three units as rental property, even though the highest and best use of the sixty units previously sold was for single family dwellings.
It is clear that the highest and best use of the condominium units at Farmington Edge is for single dwelling purposes, not for rental income. The fact that one person or entity owns several units does not change the highest and best use of each of those units. The use that would "most likely produce the highest market value" is single dwelling use, not use as rental income property, as evidenced by a comparison of sales prices of comparable individual units with the values determined by the plaintiff's appraiser, Morgan, using an income approach.
As we have previously stated, Morgan's process in determining the market value of the two sets of units as two apartment complexes was centered on the income capitalization approach. His approach produced income in the form of condominium unit sales to end users in addition to apartment rental income from unsold units. Morgan determined the fair market value of the sixty-three units with income generating potential using a discounted cashflow analysis. CT Page 1406
We note that Morgan used two different methods in determining value according to the income approach. Morgan used market rent assuming no future unit sales for one valuation, and market rent with future projected sales in determining the second valuation. The second method of determining value based on future projected sales of condominiums has been rejected by our Supreme Court inHeather Lynn Ltd. Partnership v. Griswold, supra,38 Conn. App. 163-64, as too speculative and not authorized by statute.
The first method used by Morgan involved the direct capitalization technique via the income capitalization approach as an ongoing apartment, presuming no further individual condominium unit sales in regard to the two bulk parcels of forty-five units and eighteen units. We reject this income approach to value using the first method. When General Statutes § 47-79 dictates that individual condominium units shall be separately taxed and assessed, and a substantial number of individual units in the complex have previously been sold to end users, it would be inequitable and contrary to our legislative mandate to allow sixty individual units to be appraised, assessed and taxed differently from two separate bulk parcels comprising sixty-three units in the same complex.
As an example, the average sale price of twenty units sold to end users at Farmington Edge between November, 1992 and June, 1995 was $109,362. The average of the town's valuations of those twenty units was $111,308. The margin between the actual sales prices and the town's valuations as of October 1, 1994, with respect to the twenty units was less than 2%. These valuations compared to Morgan's estimate of value show the inequity visited upon the individual purchasers of the sixty individual units if Morgan's values are used for identical units comprising the bulk parcels. Morgan's estimate of value for the Rejean Carrier units, using the first method, assuming no future sales, results in an average value of $68,889 per unit, and for the Y. C. Venture units, the average value would be $73,333 per unit. Given comparable units owned by the plaintiffs and "end users," the "end users" would end up paying higher taxes than the owners of identical units with the justification resting on the concept of using two different highest and best uses and two different methods of appraisal in the same condominium complex.
Municipalities are charged by statute to "assess all property for purposes of the local property tax at a uniform rate of seventy percent of present true and actual value." General CT Page 1407 Statutes § 12-62a(b). In order to meet this charge, an assessor cannot differentiate between an owner of a single unit and an owner of two or more condominium units in the same complex when determining the fair market value of identical units. As we have previously stated, the legislative mandate under General Statutes § 47-79 is to assess and tax each condominium as a separate unit, not as bulk parcels of multiple units. The failure of the town's assessor to comply with and conform to this legislative mandate would result in an invalid assessment and the loss of the taxes based on it. Empire Estates, Inc. v. Stamford, 147 Conn. 262,264, 159 A.2d 812 (1960). We agree with the town's expert witness, Robert J. Mulready, a real estate appraiser, that treating the sixty-three units as proposed by the plaintiffs "would be `special treatment' and unfair to all the other properties in the town of Farmington, especially to the individual owners of the other sixty-five Farmington Edge condominium units valued as individual units in accordance with GSA [47-79]." (Defendant's Exhibit 4, p. 5.)
The plaintiffs carry the burden of proving that an assessment is excessive and therefore unjust and illegal. Burritt MutualSavings Bank v. New Britain, supra, 146 Conn. 675. This, they have failed to do. As we have previously stated, sufficient credible market sales of condominiums exist in Farmington, and, indeed, even within the Farmington Edge Condominium development. Given our determination that the highest and best use of the subject properties was for single family ownership and not for rental income, the market sales approach is the most appropriate method to value the subject property.
Judgment may enter for the defendant in each case dismissing the appeals without costs to any party.
Arnold W. Aronson Judge of the Superior Court