FIRST BETHEL ASSOCIATES *v.* TOWN OF BETHEL ET AL.
(15006)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued October 28, 1994—decision released January 10, 1995

*Stephen C. Gallagher*, with whom, on the brief, was *Edward J. Gallagher*, for the appellants-appellees (defendants).

*Jerome A. Mayer*, for the appellee-appellant (plaintiff).

NORCOTT, J. The principal issue in this appeal is whether the trial court improperly reduced an assessment on the plaintiff's real property by considering the actual rental income under a lease of the subject property in calculating the market value of that property. The plaintiff, First Bethel Associates (Associates), brought an action against, inter alios, the defendant town of Bethel and its board of tax review (collectively, the town),[1] pursuant to General Statutes (Rev. to 1987) § 12-118,[2] requesting a reduction of the assess-

[1] Also named as defendants were Thomas Reynolds, chairman of the board of tax review, and John J. Mullaney and Michael Duff, members of the board of tax review.

[2] General Statutes (Rev. to 1987) § 12-118 provides: "APPEAL FROM BOARD OF TAX REVIEW. Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review in any town or city may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court, and the pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review to make such amendment effective. The court shall have power to grant such relief as to justice

ment on its real property for the tax years 1988 through 1991. The trial court found that the assessment of Associates' property was excessive and reduced the assessed value to an amount reflective of both actual rental income and market rent. The town appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The following facts are undisputed. Associates is the owner of a strip shopping center located in a general commercial zone in the town of Bethel. The property, totaling 3.75 acres, has frontage and access on three different streets and is improved by buildings containing approximately 28,000 square feet of rentable floor space. The anchor store of this complex, constructed in 1957, occupies approximately 14,000 square feet, and includes a full basement. Six general retail stores occupying approximately 11,500 square feet were built approximately ten years later. A bank, built in 1978, occupies the remaining 2500 square feet.

and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and costs, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and costs. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and costs. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

Section 12-118 now provides for appeals to the Superior Court from decisions of the Connecticut appeals board for property valuation. The provisions of § 12-118 allowing appeals from decisions of local boards of tax review have been moved to General Statutes § 12-117a.

Acting pursuant to the provisions of General Statutes § 12-63,[3] the town's assessor determined that the fair market value of Associates' property was $2,892,970, which corresponded to an assessment of $2,025,080 as of October 1, 1988.[4] Associates appealed to the Bethel board of tax review requesting a reduction of the assessment, and to the trial court after the board affirmed the assessment on the ground that the true fair market value of the subject property was only $1,122,242.

In order to arrive at the town's valuation of the property, the assessor for the town of Bethel used three methods: a comparable sales method, a cost method and an income capitalization method. Associates' expert witness, Morris Lefsetz, a licensed real estate appraiser, used only the income capitalization method. The trial court rejected the town's comparable sales method because it found that the town's assessor had used properties that "were not actually comparable to the applicant's property." The trial court also rejected the town's cost method because "the [town's] expert attributed an actual age to the premises of twenty-one years, when more than one-half of the square footage of the center was constructed more than thirty years ago. . . . [T]he expert assumed an 'effective age' of ten years. Had the actual age of the premises been used,

[3] General Statutes § 12-63 provides: "RULE OF VALUATION. The present true and actual value of land classified as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e shall be based upon its current use without regard to neighborhood land use of a more intensive nature, provided in no event shall the present true and actual value of open space land be less than it would be if such open space land comprised a part of a tract or tracts of land classified as farm land pursuant to section 12-107c. The present true and actual value of all other property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale."

[4] The assessment represents 70 percent of the fair market value of the property in accordance with General Statutes § 12-62a (d) (2).

the cost analysis would have yielded a considerably different result than the one adopted by the assessor . . . ." The trial court then focused on the income capitalization method for determining the property's fair market value.

Associates' expert arrived at a fair market value of $1,122,242, relying only on actual income derived from the property, using the income capitalization method. In contrast, the town's expert testified that he had considered and rejected the actual income method because "it wasn't indicative of the market and the law says fair market value." Rather, the town's expert utilized the income capitalization method, relying on fair market rents derived from rental information that had been supplied by other property owners.

The trial court rejected the income capitalization analyses of both parties, concluding instead that the revaluation properly should have taken into account *both* actual rental income *and* the property's market rental value. Accordingly, the court determined that although "the [town's assessor] claims to have considered the actual rental income, it does not appear to have been factored into [his] analysis. Consequently, the assessor's valuation is excessive while [Associates'] valuation . . . based solely on actual rental income, is unreasonably low." The trial court therefore recalculated the fair market value of Associates' property at $1,789,980, which corrresponds to an assessment of $1,252,986. This valuation, in the trial court's view, was "a more reasonable and realistic figure, reflective of both actual and market rent." The court rendered judgment in favor of Associates accordingly, and ordered a refund of $31,153.99, which represented Associates' overpayment of taxes to the town.

The town claims on appeal that (1) the trial court improperly reduced the assessment on Associates'

property by including in its income capitalization calculation both market rent and actual rent, and (2) the trial court's reduction of the assessment was not supported by the evidence. Associates cross appeals, claiming that because the anchor store's current lease will extend beyond the next townwide revaluation, the trial court was bound by General Statutes § 12-63b (b) to accept, and to base its judgment on, the actual rental income flowing from that lease. We disagree with all of these claims and accordingly affirm the judgment of the trial court.

I

We first address the issue of whether § 12-63b[5] requires the exclusive use of either market rent or actual rent in determining fair market value. The town

---

[5] General Statutes § 12-63b provides: "VALUATION OF RENTAL INCOME REAL PROPERTY. (a) The assessor or board of assessors in any town, when determining the present true and actual value of real property as provided in section 12–63, which property is used primarily for the purpose of producing rental income, exclusive of such property used solely for residential purposes, containing not more than six dwelling units and in which the owner resides, and with respect to which property there is insufficient data in such town based on current bona fide sales of comparable property which may be considered in determining such value, shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property. The provisions of this section shall not be applicable with respect to any housing assisted by the federal or state government except any such housing for which the federal assistance directly related to rent for each unit in such housing is no less than the difference between the fair market rent for each such unit in the applicable area and the amount of rent payable by the tenant in each such unit, as determined under the federal program providing for such assistance.

"(b) For purposes of subdivision (3) of subsection (a) of this section and, generally, in its use as a factor in any appraisal with respect to real property used primarily for the purpose of producing rental income, the term 'market rent' means the rental income that such property would most probably command on the open market as indicated by present rentals being

claims that the trial court impermissibly included actual rental income, or "contract rent" in its calculation of market value. According to the town, the assessor must consider contract rent, but if that rent is not in accord with market rent, it must be disregarded. In direct contrast, Associates claims that the trial court impermissibly included market rent in its calculation and argues that, under the facts of this case, § 12-63b (b) mandates the exclusive use of contract rent to determine market value in the income capitalization calculation. We disagree with both of these contentions.

The goal of property valuation is to determine the "present true and actual value" of the subject property. General Statutes § 12-63; see footnote 3. "The process of valuation at best is a matter of approximation. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 586, 153 A.2d 420 (1959)." *State* v. *Frilando,* 182 Conn. 397, 399, 438 A.2d 413 (1980). On appeal, the scope of our review is limited because it is a question of fact for the trier as to whether the method used for valuation appears in reason and logic to accomplish a just result. *National Folding Box Co.* v. *New Haven,* supra, 586; see also *Northeast Datacom, Inc.* v. *Wallingford,* 212 Conn. 639, 647, 563 A.2d 688 (1989); *Rice* v. *Dowling,* 23 Conn. App. 460, 465, 581 A.2d 1061 (1990), cert. denied, 217 Conn. 805, 584 A.2d 1190 (1991); *Midway Green Corp.* v. *Board of Tax Review,* 8 Conn. App. 440, 443, 512 A.2d 984 (1986).

Section 12-63b provides an assessor with guidance in producing a valuation that best approximates the actual value of the property by specifying the methods for calculation. The trial court determined, and the parties do not dispute, that the proper method for assess-

paid for comparable space. In determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination."

ing the true value of Associates' property is the capitalization of net income method as outlined in §§ 12-63b (a) (3) and 12-63b (b). "The income capitalization approach to value consists of methods, techniques, and mathematical procedures that an appraiser uses to analyze a property's capacity to generate benefits (i.e., usually the monetary benefits of income and reversion) and convert these benefits into an indication of present value." Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992) p. 409. It follows that the higher the contract rent, the higher the income expectancy and the higher the property valuation. When, as in this case, the contract rent differs significantly from the estimated rent that the property would command on the open market,[6] the relative weight given to either has a potentially significant impact on the calculation of the true and actual value.

Our disposition of the town's first claim and Associates' cross claim must start with the plain language of § 12-63b (b). "The objective of statutory construction is to give effect to the intended purpose of the legislature. *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981). . . . *Forsyth* v. *Rowe,* 226 Conn. 818, 828, 629 A.2d 379 (1993). Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction . . . . *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* 213 Conn. 184, 195, 567 A.2d 1156 (1989)." (Internal quotation marks omitted.) *Haesche* v. *Kissner,* 229 Conn. 213, 223, 640 A.2d 89 (1994).

Section 12-63b (a) (3) requires the use of "market rent" as the indicator of income. See footnote 5. "[T]he

---

[6] The town's expert estimated that $10 per square foot was reflective of market rent for similar type properties. The contract rent for the anchor store was $3.46 per square foot.

term 'market rent' means the rental income that such property would most probably command on the open market as indicated by *present rentals being paid for comparable space.* In determining market rent the assessor shall consider the *actual rental income* applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination." (Emphasis added.) General Statutes § 12-63b (b). Thus, the statute requires that, in determining a property's "market rent," the assessor and, therefore, the court, in determining the fair market value of the property, must consider *both* (1) net rent for comparable properties, and (2) the net rent derived from any existing leases on the property. This legislative approach makes sense because it reflects the reality that a willing seller and a willing buyer—whose ultimate judgments are what we mean by "fair market value"[7]—would themselves consider in arriving at a price for the property that is subject to leases that do not closely approximate current rentals for similar properties.

The town argues that contract rent should not factor into the valuation process unless it is equivalent to the rent that the property would command on the open market. Such a construction, however, would mean that contract rent would factor into the analysis only if it had no effect on the overall valuation, rendering meaningless the direction of § 12-63b (b) to "consider"

---

[7] "Fair market value is defined as the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal . . . . *Uniroyal, Inc.* v. *Board of Tax Review,* 174 Conn. 380, 390, 389 A.2d 734 (1978). A further definition is found in *Mazzola* v. *Commissioner of Transportation,* 175 Conn. 576, 581–82, 402 A.2d 786 (1978), to the effect that fair market value is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use. . . ." (Internal quotation marks omitted.) *Carol Management Corp.* v. *Board of Tax Review,* 228 Conn. 23, 34, 633 A.2d 1368 (1993).

actual rental income. Similarly, Associates' argument that only contract rent should be considered ignores the statute's direction to take into account what the "property would most probably command on the open market . . . ." It is a "well established rule of statutory construction that 'we will not read a statute in such a way as to render a portion of it superfluous.' *State* v. *Christiano*, 228 Conn. 456, 472, 637 A.2d 382 (1994); *White* v. *Burns*, 213 Conn. 307, 320, 567 A.2d 1195 (1990); 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992 Rev.) § 46.06." *Fleming* v. *Garnett*, 231 Conn. 77, 90–91, 646 A.2d 1308 (1994). Therefore, we reject the parties' proposed constructions because they each would render a portion of the statute mere surplusage.

The trial court's thoughtful analysis, on the other hand, properly considered both contract and market rent. The trial court increased "the anchor store's rent from $3.46 to $6.00 per square foot, a more reasonable and realistic figure, reflective of both actual and market rent." A trial court is vested with broad discretion in municipal tax appeals to determine true and actual value, and "has the right to accept so much of the expert testimony and the recognized appraisal methods which are employed as it finds applicable." *John F. Epina Realty, Inc.* v. *Space Realty, Inc.*, 194 Conn. 71, 84, 480 A.2d 499 (1984). "The exercise of this right would be reviewable only if it were apparent that the [trial court] misapplied or overlooked, or gave a wrong or improper effect to, any testimony or consideration which it [has a] duty to regard." (Internal quotation marks omitted.) Id., quoting *Federated Dept. Stores, Inc.* v. *Board of Tax Review*, 162 Conn. 77, 86, 291 A.2d 715 (1971). The function of the court below was to determine the "true and actual value of the plaintiff's property. *Dickau* v. *Glastonbury*, 156 Conn. 437, 441, 444, 242 A.2d 777 [1968]; *Burritt*

*Mutual Savings Bank* v. *New Britain*, 146 Conn. 669, 673, 154 A.2d 608 [1959]." (Internal quotation marks omitted.) *Executive Square Ltd. Partnership* v. *Board of Tax Review*, 11 Conn. App. 566, 570, 528 A.2d 409 (1987). We are persuaded, on this record, that the trial court properly applied the law in correcting the town's valuation of Associates' property.[8] The plain language of § 12-63b (b) demonstrates that the trial court properly exercised its discretion in considering both market rent and contract rent in making a valuation based on the income capitalization method.

## II

The town also claims that the trial court's valuation was not supported by the evidence. Again, we disagree.

The trial court heard testimony of two expert appraisers, each of whom testified to a different assess-

[8] Nonetheless, the town argues that reference to the legislative history of § 12-63b (b) leads inextricably to the conclusion that market rent, rather than contract rent, is the determining factor. The legislative history cited by the town, however, involves Raised Committee Bill No. 635, entitled "An Act Providing That The Term Market Rent As Used In Appraisal Of Income Producing Real Property Refers To Current Rental Value *Irrespective* Of Existing Contract Rent." (Emphasis added.) Although this committee bill did call for income capitalization appraisal to exclude contract rent, this bill was not passed by the legislature.

In fact, the Senate passed Substitute Senate Bill No. 635, entitled "An Act Concerning Determination Of Market Rent As The Term Is Used In Relation To Appraisal Of Rental Income Real Property." This bill, No. 84-417 of the 1984 Public Acts, was passed by the General Assembly and codified as General Statutes § 12-63b. The distinction between the successful and unsuccessful bills is critical. Senate Bill No. 635 provided that market rent means "the current rental income that would most probably be applicable to a particular parcel . . . notwithstanding the actual rental income." The substitute bill, however, provided the exact opposite: that the assessor *"shall consider* the actual rental income applicable . . . at the time of such determination." Thus, to the extent that the legislative history of the original Senate bill supports the town's argument regarding the exclusion of actual rent, it is irrelevant to our interpretation of § 12-63b (b).

Furthermore, a review of the legislative history of the substitute bill reveals that the trial court's analysis of § 12-63b (b) corresponds with the

ment value and appraisal method for the property. Associates' expert offered an assessed value that was substantially less than that of the town's expert. "The trier of fact arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value . . . . *O'Brien* v. *Board of Tax Review*, [169 Conn. 129, 136, 362 A.2d 914 (1975)]." (Internal quotation marks omitted.) *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 105, 626 A.2d 1292 (1993). The town's argument, however, that the trial court should have ignored Associates' appraisal because it used only one of three statutory appraisal methods ignores the fact that Associates' appraiser was not obligated to use any one method of appraisal.

legislative intent. The issue of whether to include contract rent was hotly debated: the original bill called for income capitalization "irrespective" of contract rent; the final bill called for consideration of contract rent as well as market rent. In describing the bill, Senator Michael J. Skelley remarked that "this Bill has been worked over by quite a few people and there has been a substantial agreement that was made on this Bill. . . . The term market rent is defined in the Bill which means rental income of that property—of such property would most properly command on the open market. As indicated, the present rental is being paid for comparable space. It's also mentioned that in determining the market rent, the assessor shall consider the actual rental income under the terms of the existing contract lease. This cuts both ways but it brings into light a much more equitable situation of how to determine the worth of commercial property . . . ." 27 S. Proc., Pt. 7, 1984 Sess., p. 2474, remarks of Senator Michael J. Skelley.

Representative Ronald L. Smoko's comments are also telling. "This bill amends section 12-63b, which is the assessment statute on income-producing property to clarify what is meant in that statute by market value. . . . Mr. Speaker, this bill lends some clarity to the statute in the continuing saga of the battle between contract rent versus market rent. Mr. Speaker, it is a bill that has been worked on by a number of individuals and has been worked on to the point where virtually all of those parties with a position have come to the conclusion that this is a fair and rational restructuring of [§] 12-63b, and I would urge passage of this bill." 27 H.R. Proc., Pt. 18, 1984 Sess., pp. 6460–61, remarks of Representative Ronald L. Smoko.

The directive of § 12-63b applies to "[t]he assessors . . . in any town, when determining the present true and actual value of real property as provided in section 12–63 . . . ." A party challenging the validity of such an appraisal is not required to follow the structure outlined in § 12-63b, but is only required to provide evidence proving that his property has been overassessed. See General Statutes § 12-63 (b). Although a trial court certainly could consider the methodology used by an appraiser in determining what weight to give the appraisal, the trial court is not required to ignore an appraisal from a party challenging the assessment simply because it did not conform to the standards set for the town's assessor.

In essence, the town asks this court to retry the facts on appeal. "On appeal, this court may reverse or modify the decision of the trial court only if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record. Practice Book § 4061. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. *Lukas* v. *New Haven*, 184 Conn. 205, 208, 439 A.2d 949 (1981); *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 88, 612 A.2d 1130 (1992); *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988). A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985), quoting *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); see also *Web Press Services Corp.* v.

*New London Motors, Inc.*, 205 Conn. 479, 483, 533 A.2d 1211 (1987)." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 503–504, 646 A.2d 1289 (1994). The town has offered no basis for a conclusion that the court's finding was clearly erroneous. The town's claim is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.