[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is an appeal from a decision by the Board of Tax Review of the Town of Redding concerning real property situated at 85 Diamond Hill Road, Redding, Connecticut. The plaintiff owner, Little River Development, Inc., claims it is aggrieved by the action of the tax assessor who ascribed an assessment value to the property of $1,012,980 on October 1, 1991. Amendments to the complaint by way of the second, third, and fourth counts allege that on October 1, 1992 and October 3, 1993 the assessed value was $1,000,380 and on October 1, 1994 the assessed value was $1,042,250.
An appeal from a board of tax review requires the court to perform a double function. The court must first determine that the plaintiff is aggrieved by the board's action. Once the court finds that the board's action resulted in an unjust and illegal tax it can exercise its discretion in granting the relief it deems appropriate.Gorin's Inc. v. Board of Tax Review, 178 Conn. 606, 608,424 A.2d 282 (1979).
The court must ascertain the true and actual value of the subject property. Hutensky v. Avon, 163 Conn. 433, 436-37,311 A.2d 92 (1972). "The trier arrives at his own conclusions as to the value of the land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property." O'Brien v.Board of Tax Review, 169 Conn. 129, 136, 362 A.2d 914 (1975). See also First Bethel Associates v. Bethel, 231 Conn. 731, 743,651 A.2d 1279 (1995). CT Page 9297
The court is mindful that "[t]he best test for the determination of value ordinarily is that of market sales." Hutensky v. Avon, supra, 437. "`[A] wide discretion is to be accorded to assessors, and, unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes.'" Burritt MutualSavings Bank v. New Britain, 146 Conn. 669, 675, 154 A.2d 608
(1959). (Citations omitted) Midway Green Corporation v. Board of TaxReview, 8 Conn. App. 440, 442, 512 A.2d 984 (1986).
The court finds that the plaintiff has met its burden of proof as to aggrievement in that the subject property was overassessed on October 1, 1987.
The court makes the following findings of fact based on the testimony and the exhibits as well as its own view of the property: The plaintiff is a sub-chapter S corporation of which Felix I. Charney holds the majority of the stock. Charney and his former wife purchased the property on September 12, 1986 for the sum of $1,350,000. On June 17, 1991, Charney transferred the property to Little River Development, Inc. the sole business of which is to own the subject property. The sales price was $1,100,000.
The property was revalued in the autumn of 1987 and again in 1994. In 1992, upon the request of the plaintiff, the assessed value was reduced and that reduction is reflected in the values assessed for 1992 and 1993.
The subject property consists of 4.7 acres of land on which is a seven room dwelling of 2,612 square feet and a five room dwelling of 2,496 square feet as well as a garage with an apartment. The property also contains an inground swimming pool, greenhouse, tennis court, and dam and waterfall on the Saugatuck River. There are also other structures. The parties agreed that the determination of value is based on the revaluation of October 1, 1987 and therefore each party presented evidence through appraisers as to the fair market value on that date. Both appraisers agreed that the highest and best use of the property was for residential use. Both appraisers used the sales comparison approach, although the plaintiff's appraiser used the cost approach as well.
The plaintiff's appraiser, Stephanie Gaffney of Steven A. Stollman Appraisal Company, used three subjects: CT Page 9298
a. 210 Lonetown Road which had more than nine acres and a twelve room house and a studio which sold in January 1987 for $960,000;
b. 261 Black Rock Turnpike which consisted of four acres and one dwelling, larger than the subject, with an inground pool which sold for $630,000 on December 22, 1986: and
c. 18 a/k/a 28 Limekiln Road, a smaller home than the subject on fourteen acres without any additional dwelling area or pool, which sold for $730,000 on December 31, 1986.
The defendant's appraiser, Ronald Glendinning, also used the property at 210 Lonetown Road. In addition, he selected Four Fox Run Road, an eight room house with two guest cottages and an inground swimming pool on five acres of land. This property sold for $1,000,000 on October 30, 1987. All the foregoing properties selected by the appraisers were in Redding. Glendinning also chose a property in Ridgefield. The court did not give this last market sale much weight since there may have been other facts which affected the sales price in Ridgefield. No credible evidence was presented which convinced the court that a Ridgefield sale should have great weight as a comparable sale.
The plaintiff's appraiser concluded that the fair market value of the subject property on October 1, 1987 was $1,100,000. The defendant's appraiser concluded that the market value on that date was $1,490,000.
When the property was purchased by the Charneys in 1986, Felix T. Charney served as a co-broker in the transaction. He received a commission in the approximate amount of $34,000. He, therefore, claims that the true purchase price of the property was $1,316,000 rather than the $1,350,000. No credible evidence was provided at trial to prove that the value of the house was $1,316,000 on the day of sale or that the transaction was anything other than an arm's length transaction.
Since Charney bought the property in 1986, and since the revaluation of 1987, there have been no major improvements to the property. The outbuildings remain in approximately the same condition, the interior of the property was not viewed by the revaluation inspection team and the field card bears the notation, "[s]ent letter — no response." Charney claims he received no CT Page 9299 communication regarding an inspection of the property. Nevertheless, the fair market value of the property, based on an assessed value of $1,012,980 was $1,447,114, for an increase of $97,114 over the purchase price of thirteen months earlier.
The defendant's appraiser who had a 42 percent ownership interest in the revaluation company which performed the 1987 revaluation for the defendant town, increased the property's value by percent. Glendinning relied heavily on a study of single family residential price trends in the Greater Danbury area which was prepared by John M. Clapp of the University of Connecticut Center for Real Estate and Urban Economic Studies. The court has not placed any reliance on this data because the Greater Danbury area contains diverse areas and zones unlike the Town of Redding. In addition, the court did not have the benefit of the entire study. Excerpts from the study, while in evidence in Glendinning's appraisal report, do not provide the court with information as to the assumptions made, the data base or other factors needed to evaluate the excerpted material.
Glendinning also included evidence of the residential Sale/Resale Analysis of certain properties sold between 1986-1987 in Redding. The houses utilized were not in the price range of the subject property nor the properties utilized in the comparable sales appraisals. Glendinning conceded that there is less demand for the type of property similar to the subject property. Therefore, the court does no place great reliance on this data. Further, Glendinning stated that the best evidence of the fair market value was the sale price of the subject property in 1986.
Glendinning ascribes the value of $187,200 to the five room structure near the inground pool, a sum arrived at by using a multiple of $75 per square foot by 2,496 square feet. He did not use the $50 per square foot multiple that he had used in computing the valuations for the studio apartment on the subject property or in his comparable sales subjects. This item alone accounts for a differential of $62,400 between the $50 per square foot and the $75 per square foot multiple. This building is secondary to the main residence. It is behind and to the side of the garage and both are close to the main dwelling separated by a modest size lawn. It consists of a small, functional kitchen, a bathroom, living room, small storage room and dining room on the lower level. The upstairs is a large, relatively open area, in the middle section of which is a double sink, cabinets and counter space and drawers, as though a second kitchen once existed there, and a small bedroom. The CT Page 9300 greenhouse is attached to one side of this building.
Similarly, Glendinning appraised the inground pool of the subject property at $40 per square foot or $40,000. However, he used the multiple of $30 per square foot for comparable sales subjects 1 and 3. He gave no explanation for this differential which added $10,000 to the appraised value of the subject property.
The court agrees with the plaintiff's appraiser that this is not a luxurious property. The main dwelling is well appointed and comfortable. However, the court declines to accept her valuation. There was no evidence to support her conclusion that the value of the property decreased from $1,350,000 in June 1986 to $1,100,000 on October 1, 1987.
The court also declines to find the fair market value to be $1,316,000 which is the sale price less the commission paid to Charney.
The 1994 tax assessment increased because the new tax assessor who had not been the assessor in October of 1987 inspected the home in connection with this appeal. He did not know what improvements, if any, had been made and he was not familiar with how interior improvements were valued by the revaluation company, Lesher-Glendinning Municipal Service Company in 1987.
Based on the foregoing, the court finds that the fair market value of the subject property on October 1, 1987 was $1,350,000 and the assessed value $945,000. The court finds that there was insufficient evidence to demonstrate that the 1994 assessment was appropriate.
Accordingly the court sustains the plaintiff's appeal and directs that the assessed value of the subject property be reduce to $945,000.
Leheny, J.