[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the Board of Tax Review of the City of Milford whereby the plaintiff is the owner of certain property in Milford located on the shoreline and known as Burwell's Beach more aptly described as Hillside Avenue. The applicant appeals the assessment whereby the assessment exceeded the fair valuation of property.
The City of Milford denies the allegation and claims that CT Page 12072 their assessment is the fair value of said property.
"In Connecticut, the power to levy taxes is vested in the General Assembly. . . . In exercising this power, the legislature is given broad discretion, subject only to the constitutional requirements of due process and equal protection. . . . Included within the General Assembly's discretion is the power to authorize municipalities to collect taxes, for example, by granting them a charter. . . . A municipality, as a creation of the state, has no inherent power of its own, . . . , nor does it have any powers of taxation except those expressly granted to it by the legislature. For these reasons, a municipality's powers of taxation can be lawfully exercised only in strict conformity to the terms by which they were given; . . .; and statutes conferring authority to tax must be strictly observed. . . ." Pepin v. Danbury, 171 Conn. 74,82-83, 368 A.2d 88 (1976).
The statute conferring authority upon the Town of Milford to lay and collect taxes upon real property is General Statutes §12-64. Ralston Purina v. Board of Tax Review, 203 Conn. 425, 434,525 A.2d 91 (1987); National Folding Box Co. v. New Haven, 146 Conn. 578,584, 153 A.2d 420 (1959). Section 12-64 provides that all nonexempt real estate "shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors. . . ." General Statutes § 12-64(a). "The duty imposed upon tax assessors by this law is to find the `present true and actual valuation' of any property to be taxed, and to put it into the owner's list at that valuation."Underwood Typewriter Co. v. Hartford, 99 Conn. 329, 336, ___ A.2d ___ (1923).
General Statutes § 12-63 defines "present true and actual valuation." It provides that the present true and actual valuation of all real property, except land classified as farm land pursuant to section 12-107c, as forest land pursuant to section 12-107d, or as open space land pursuant to section 12-107e, "shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale." General Statutes § 12-63.
Town assessors have been advised to follow a three step procedure to assure compliance with the statutory requirements for taxation on real property: "(a) The fair value[1] of the property as of the assessment date must be determined. (b) A percent, not CT Page 12073 exceeding 100 percent, of the fair value, must be determined by the assessing authority for uniform application to all property within the town. (c) The assessment value, i.e., the value for the purpose of taxation, for any given piece of property in the town, must be ascertained by applying the determined uniform percent to its fair value as of the assessment date." Ralston Purina v. Board of TaxReview, supra, 203 Conn. 434.
The first step is to determine the fair value of the property as of the assessment date. Unfortunately, there is not one single talismanic formula that can be applied to all property, regardless of its individual characteristics, to ascertain its fair market value. Presently, "[a]t least four [approved] methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence." SecondStone Ridge Cooperative Corp. v. Bridgeport, 220 Conn. 335, 342,597 A.2d 326 (1991). Generally, the first method, the analysis of comparable sales, is viewed as the best indicator of a property's fair value. The analysis of comparable sales method generates a value "fixed by sales in ordinary business transactions, 
established when other property of the same kind in the same or comparable location has been bought and sold in so many instances that a value may reasonably be inferred. . . . In other words, the best test [of fair market value] is ordinarily that of market sales." (Citations omitted.) National Folding Box Co. v. NewHaven, supra, 146 Conn. 584.
The valuation of property, however, is not an exact science. Each property and every situation is unique. Indeed, circumstances may exist concerning the property in question where blind reliance upon the market test would itself lead to an erroneous assessment of the property's fair market value.[2] In such a case, an alternative method, or a combination of methods, must be employed. See Heather Lyn Ltd. Partnership v. Griswold, 38 Conn. App. 158,164, ___ A.2d ___ (1995). Thus, "[t]he process of estimating the [fair market] value of property for taxation is, at best, one of approximation and judgment, and there is a margin for a difference of opinion." Second Stone Ridge Cooperative Corp. v. Bridgeport,220 Conn. 335, 342, 597 A.2d 326 (1991); First Bethel Associatesv. Bethel, supra, 231 Conn. 738. It follows that two different valuations could be legally sufficient assessments of a property's "present true and actual valuation." CT Page 12074
Accordingly, on appeal, the question is whether the assessor performed his or her duty under the law. Again, the duty imposed upon tax assessors by this law is to find the `present true and actual valuation' of any property to be taxed, taking into consideration the individual characteristics of the subject property. The valuation method used assessors must in reason and logic accomplish a just result. First Bethel Associates v. Bethel,
supra, 231 Conn. 738. "If they fail or neglect to do this, the assessment will be illegal, and should be corrected by the board of relief upon appeal." Underwood Typewriter Co. v. Hartford, supra,99 Conn. 336; see also General Statutes § 12-111 (providing a person aggrieved by the doings of an assessor the right to appeal to a board of tax review); General Statutes § 12-119 (providing for a direct right of appeal to the Superior Court in limited situations). If the board of relief refuses or neglects to correct the illegal assessment, "the power of the Superior Court may be called into action to grant relief to the person aggrieved. But the board of relief may correct an illegal assessment, and the Superior Court may grant relief from an illegal assessment, only by obeying the mandate of the law to set the owner's taxable property in his list at its `present true and actual valuation.' This is the requirement imposed upon each tribunal in the process of taxation." Underwood Typewriter Co. v. Hartford, supra; see also; General Statutes § 12-117a (providing the right to appeal the decision of the board of tax review to the Superior Court).
The Superior Court's review of the assessment is de novo. General Statutes § 12-117a. The Superior Court acts as the trier of fact and must "arrive at his own conclusions as to the value of the [property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value." Reynaud v. Winchester, 35 Conn. App. 269, 274. In effect, when called to action, the court is the ultimate assessor, because the court may "grant relief from an illegal assessment, only by obeying the mandate of the law to set the owner's taxable property in his list at its `present true and actual valuation.'" Underwood Typewriter Co. v. Hartford.
This particular case is unique insofar as the city appraiser, in determining the fair assessment value, assessed each property with an identical figure of $183,600 before adding in for frontage of all properties. There were a number of properties on appeal that each have the same identical assessment regardless of the size of the property or unique value of the property. These identical CT Page 12075 properties were represented to the court as comparable values. Upon the court questioning the city appraiser, he indicated that this fixed method of assessment is standard. However, the appraiser could not give an example of this type of assessment occurring anywhere else. It appears the appraiser substantiated an assessment created by a prior appraiser and just corroborated the prior evaluation. Comparable values were introduced, but do not appear to enter into the final valuation of the property.
Using all these steps, the court indicated at the inception of this opinion that the court would take issue with the credibility of the city assessment. At first instance, the court indicated the possibility of returning all tax appeals with the same assessment determination back to the Assessor's office for a new assessment. However, Connecticut case law does not give this court the latitude to do so. Connecticut Statutes § 12-117a states that the trier of fact must arrive at his or her own conclusions as to the value of the property.
Therefore, the court finds that the city assessor's land valuation has been determined without any substantive evidence, and reduces the land value as follows:
Land value: $196,100 (reduced from $206,100)
 Dwelling: $ 79,900
 Outbuilding: $ 2,100
for a total assessed value of $278,100. Therefore, the appellant shall be given a tax credit for the $10,000 reduction in the land assessment from the time of the assessment, plus interest.
BY THE COURT,
Mancini, J.