[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Milford Crane Machine Co., appeals the Milford Board of Assessment's decision which effectively affirmed the 1995 tax assessment of two pieces of the plaintiff's real property. The tax assessor determined that on October 1, 1991, the appraised fair market value of the first property, commonly known as 143 Buckingham Avenue, was $1,158,700 ($475,800 for the land, $678,900 for the buildings, and $4,000 for additional improvements). The assessed value for tax purposes was therefore determined to be $811,090 ($333,060 for the land, $475,230 for the buildings, and $2,800 for additional improvements).[1] The tax assessor determined that on October 1, 1991, the appraised CT Page 799 fair market value of the second property, a vacant lot located across the street from the first property, was $71,100. The assessed value for tax purposes was therefore determined to be $49,770. The plaintiff claims that the Milford tax assessor overvalued his properties for the 1995 assessment year, and thus, overassessed it for tax purposes.
 I.
The plaintiff appeals the Board of Assessment's decision pursuant to General Statutes § 12-117a.[2] "In an appeal from a board of tax review pursuant to § 12-117a, the function of the trial court is to determine the true and actual value of the plaintiff's property." (Bracketts omitted; internal quotation mark omitted.) Beacon Hill Condominium Assoc. v. BeaconFalls, 41 Conn. App. 249, 253, 675 A.2d 909 (1996). The court's function is consistent with the goal of property valuation, which "is to determine the `present, true and actual value' of the subject property." First Bethel Associates v. Bethel,231 Conn. 731, 738, 651 A.2d 1279 (1995) quoting General Statutes §12-62.[3]
"A trial court hears a § 12-117a tax appeal case de novo;Carol Management Corp. v. Board of Tax Review, 228 Conn. 23, 25
n. 1, 633 A.2d 1368 (1993); with the burden of proof on the taxpayer who claims aggrievement to prove that the assessor's valuation is not the true and actual value of the property."Ireland v. Town of Wethersfield, 41 Conn. App. 421, 426,676 A.2d 422 (1996). In an appeal under § 12-117a, the valuation of property for assessment purposes is thus a question of fact for the court as the trier. Reynaud v. Winchester, 35 Conn. App. 269,274, 644 A.2d 976 (1994). While the court recognizes that "[t]he process of valuation at best is a matter of approximation"; FirstBethel Associates v. Bethel, supra, 231 Conn. 739; the court must nevertheless fulfill its charge and "arrive at [its] own conclusions as to the value of [property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and [the court's] own general knowledge of the elements going to establish value including [its] own view of the property." O'Brien v. Bd. of TaxReview, 169 Conn. 129, 136, 362 A.2d 914 (1975); Reynaud v.Winchester, supra, 35 Conn. App. 274.
II. CT Page 800
The plaintiff's properties are within the territorial limits of Milford, Connecticut. The first property consists of 3.17 acres; the second property approximately one third of an acre. As far as the second property is concerned, only the plaintiff submitted an appraisal. The defendant submitted the tax assessor's card for the second property; see Defendant Exh. B; however, independently, it has no evidentiary value in assisting this court determine the present, true and actual value of the second property. While the assessor's card informs the court that the assessor determined the value of the second property by multiplying the second property's square footage by $4.41 per square foot, the assessor's card fails to provide the court with market conditions and appraisal assumptions that support the application of $4.41 per square foot to the second property. Therefore, in light of the plaintiff's unrebutted appraisal report of the second property, which contained market conditions and appraisal assumptions, the court finds that the present, true and actual value of the second property as of October 1, 1991, was $48,500.
As concerns the first property, both appraisers concluded that the property was overvalued. The plaintiff's appraiser determined that on October 1, 1991, the present, true and actual value of the first property was $515,000. The defendant's appraiser concluded that the value as of October 1, 1991, was $800,000. In reaching their respective conclusion, both appraisers used the sales comparison approach and the income approach. Both appraisers agree that the cost approach is not a reliable indicator of value in this case. The court has no reason to disagree.
In reaching its own conclusion, however, the court relies upon the sales comparison approach. There are several reasons why the court relies upon the sales comparison approach: First, the income approach produces different valuations depending upon the holding period utilized. The vast difference among the valuations causes the court concern over its reliability. Second, the plaintiff's appraiser testified that more weight should be placed "upon the sales comparison approach because of the nature of the property, thinking that it would most likely be purchased by a single user rather than rented as an income producing property." The court agrees with this opinion. Finally, there is considerable harmony in the price per square foot generated by the two appraisers in their sales comparison approach. Therefore, the court will rely upon the sales approach analysis provided by CT Page 801 the two appraisals.
The plaintiff's appraiser determined that the price per square foot was $19. The defendant's appraiser concluded that the price per square foot was $23. The court finds the defendant's price per square foot is more reliable as an accurate price per square foot of the subject property because the defendant's appraiser used the comparable properties that were closer in vicinity to the subject property and the date of the comparable sales were closer in time to the valuation date of October 1, 1991. These factors eliminate as much appraiser subjectivity as possible, and lead the court to conclude that the true price per square foot of the subject property is $23.
The final question is what is the square footage of the subject property. At issue is whether to include the 8,000 square feet of what is described in the plaintiff's appraisal as Building 2. Testimonial evidence suggests that Building 2 has no utility. The building is rundown and the plaintiff's appraiser reported that the best course of action would be to demolish the building. The court's inspection of the property confirms the testimony that Building 2 is in a rundown state. Building 2, however, remains on the property, and thus, offers the possibility of use as storage space to the owner or person occupying the land. The appropriate method to adjust the valuation of the property in light of the condition of Building 2 is with a downward adjustment to the price per square foot generated by the comparable sales. Implicitly, the Legislature agrees. General Statutes § 12-64s. Indeed, in this case, the defendant's appraiser testified that the condition of Building 2 was taken into consideration in arriving at his price per square foot for the subject property. The court credits this testimony. Thus, the court finds that the value of the first property is $800,000.
 III.
In conclusion, the court finds that the value of the first property is $800,000. The court finds that the value of the second property is $48,500. The defendant is therefore ordered to change the assessment list in accordance with this decision.
SO ORDERED
Philip E. Mancini, Jr. CT Page 802 Judge Referee