[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court for orders and an evidentiary hearing to determine the sales price and terms of sale of the property known as The Bluecross Animal Hospital at 530 East Putnam Avenue, Greenwich, Connecticut. The defendant filed a motion, being Motion #150. The plaintiff filed a motion requesting similar CT Page 1686 relief, being Motion #149. This is a joint decision on both of these motions. The court took evidence. The court had the parties submit interrogatories to the court and made the parties draft their answers to the interrogatories.
The court on May 15th of 1995 rendered a memorandum of decision concerning issues between the parties. The original action was an action seeking specific performance of a purchase and sale agreement for the purchase of the subject premises wherein the plaintiff's business is located, pursuant to a written agreement and written lease agreement incorporated therein. That lease agreement was entered into evidence as Exhibit A in this hearing. On May 15, 1995 when this court issued its memorandum of decision, it stated in part "This court retains jurisdiction over this issue (the option sales price) in the event that the parties are unable to agree or comply and either party may seek this Court's further orders". The court further ordered that the defendant specifically perform the contract sued upon by the plaintiff, including honoring an option to purchase the subject property.
The option provision enforced by this Court provided that "The Buyer and Seller shall appoint an appraiser of their own choice and those two appraisers shall select a third appraiser. Such three appraisers shall establish the reasonable market value of the premises, at the time that the option is exercised.".
In the court's order of May 15, 1995 it stated "The value of the premises is to be determined as of April 21, 1993". In the May 15th order, the court ordered that a real estate contract was to be forwarded by June 30, 1995 to the plaintiff. The court finds that the defendant complied with that part of the court order.
Subsequent to the court's decision, the parties selected a third appraiser, Mr. Gordon Jones of Stamford, Connecticut. The court finds that on various dates the plaintiff's appraiser, the defendant's appraiser, and the third appraiser, Gordon W. Jones, had endeavored to establish the fair market value of the subject premises as of April 21, 1993. It is not clear from the record why the three appraisers have been unable to determine the fair market value as of April 21, 1993. The parties agreed that the appraisers have been unable to establish the market value as of this date and are deadlocked in their deliberations. The defendant's certified real estate appraiser, Mr. Charles Magyar of William Raveis Real Estate in Greenwich who has resided in Greenwich for many years and has been in the real estate business in the town of Greenwich for CT Page 1687 many years has been involved with commercial real estate for his own accounts and customers' accounts. Mr. Magyar rendered his opinion that as of April 21, 1993 the fair market value of the property was $1,100,000.00 pursuant to his written appraisal. See Exhibit F.
The plaintiff's appraiser, Patrick J. Wellspeak, has rendered an opinion that as of April 21, 1993, the fair market value of the property was $550,000.00 pursuant to his written appraisal which was introduced into evidence at the hearing as plaintiff's Exhibit 1.
In large part, the plaintiff has paid rent for the use of the property from May 15, 1995 to the present time. On November 27, 1995, this court in a motion for contempt and in a motion for further orders, ordered the plaintiff to make the payments and said in part "The parties are to negotiate to resolve what part of that is payment on mortgage, what part of it is on rent, and if it can't be resolved then on or after the closing takes place I will make further orders that are appropriate concerning that".
The plaintiff claims credit for those rent payments against a purchase money mortgage the defendant is obligated to provide. The defendant maintains that in the underlying agreement paragraph 3B does not provide for any such credit and that it would not be appropriate to provide any such credit to the plaintiff against the purchase money mortgage.
The court in rendering this decision has taken into consideration all of the evidence at the hearing on the motions, all of the exhibits, the arguments of counsel, and the court's original decision of May 15, 1995.
In making a determination of the value of property a judge is not bound by the appraisal values or the method of valuation of any appraiser before him. First Bethel Associates v. Bethel,231 Conn. 731 (1995). It is appropriate for a judge who makes an independent valuation of property to "`arrive at his own conclusions as to the value of land by weighing the opinion of appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value' including his own view of the property."First Bethel Associates v. Bethel, supra at 743, citingO'Brien v. Board of Tax Review, 169 Conn. 129, 136 (1975).
However, other methods of independent court valuation have CT Page 1688 also been upheld. See Robinson v. Westport, 222 Conn. 402, (1992) (court considered comparable sales as well as the raw data used by appraisers in applying the lot method); Tucker v. Hartford,15 Conn. App. 513 (1988) (court appraisal based on appraisals offered and a viewing of the subject properties); Gasparri v. Dept. ofConn. Transp., 37 Conn. App. 126 (1995) (court appraisal based on viewing the premises, hearing of all evidence and study of appraisal reports).
Regardless of the method used to determine valuation, "[t]he conclusions reached by the trier must stand unless they are legally or logically inconsistent with the facts found or unless they involved application of some erroneous rule of law." Tucker v.Hartford, supra 517-8, citing O'Brien v. Board of Tax Review,
supra at 136.
This court in evaluating the expert witnesses and their opinions finds the testimony and the report of Gordon W. Jones as set forth in Exhibit 2 to be the most credible. Mr. Jones in his report used the cost approach as one of the tools in determining the value. He found the cost approach led him to conclude that the market value of the property as of February 1, 1993 was $700,000.00. He then used the sales comparison approach which he found after analysis to be nonsupportive of a value. He then used the income approach, looking first at the discounted cash flow and came up with a value of $650,000.00. He then used the income approach with the direct capitalization analysis and came up with a value of $710,000.00.
He indicated that the cost approach had been given strong consideration regardless of the dated age of the building improvements. He said that this was due in part to the fact that the land component represents approximately 65% of the total value and has been determined with a high degree of confidence based upon comparable sales within this regional market. He also felt the income approach had been given strong considerations, particularly based on the fact that there is a lease to a stipulated quality tenant and the contract rent is determined to approximate market rates per square foot of ground floor area when factoring in the incremental value benefits of the lower level. Then he concluded that based on all the information presented and considering the physical and locational characteristics of the subject property and the value impact of the prevailing lease, his determination of market value as of February 1, 1993 was $700,000.00. He testified the value was the same for April 21, 1993. Accordingly, the court CT Page 1689 adopts his value as the court's value.
The second question asked in the interrogatories was whether or not the contract price for the purchase of the premises should equal the reasonable market value of the premises less 20% pursuant to paragraph 4(a)(i) of the contract since the plaintiff exercised the option to purchase after March 31, 1987. The parties agreed that this question is answered yes, and this was stipulated and agreed to by the plaintiff and the defendant.
The court in its May of 1995 order gave attorney's fees in the sum of $4,500.00, and the question posed is whether the plaintiff should receive a credit against the value of the premises for the $4,500.00 and, if so, what amount of statutory interest, if any, should be included. The court determines that the credit should be given to the plaintiff in the sum of $4,500.00. The court does not find that the defendant wrongfully or wilfully withheld payment and, accordingly, awards no statutory interest.
The parties agreed that Exhibit J would be the form of contract; that Exhibit J would be the form of mortgage; the parties agreed that Exhibit J would be the promissory note.
The parties agreed that the closing would take place within 60 days of the court's decision as to the reasonable market value of the premises. The parties agreed this was reflected in paragraph 19 of the contract.
The parties posed the question whether or not the plaintiff is entitled to an award of reasonable attorney's fees and costs and, if so, how much. The court finds that there was no evidence concerning the amount of the attorney's fees or how they were computed, and the court finds that although the parties strongly disagreed about the value of the property, neither one wrongfully interfered to the extent that attorney's fees should be awarded in this case.
The court further finds that the question posed by the defendant as to what amount is owed the defendant as unpaid rent and installments on the purchase of the veterinary practice for May 1995 to the present is a total of $3,060.00. This represents unpaid rent for July of 1995 and $2,500.00, the unpaid installment on note for the purchase of the practice for August, September, and October of 1995. This amount is to be adjusted as part of the issues to be resolved at the closing. CT Page 1690
Whether or not the plaintiff should receive a credit against the reasonable market value of the premises for any portion of the rent paid by him to the defendant for May 1995 to date and, if so, how much was a question posed. The plaintiff said yes, and the defendant said no. The plaintiff claims that the monthly rental of $7,833.34 which would have been paid from July 30, 1995 through February 1, 1997 or eighteen months would be $141,000.00. The court finds that the plaintiff has failed to sustain his burden that the rental payments are a fair measure of what the mortgage payments will be. The court cannot retroactively recharacterize the nature of the payment. The major problem that the parties had in this agreement was although the language in paragraph 3, paragraph 4(a)(1) was mandatory in nature that the buyer and seller should appoint an appraiser of their own choice and those two appraisers shall select a third appraiser, and such three appraisers shall establish the reasonable market value of the premises at the time the option is exercised. There was no provision for the mechanics of how this would work. Normally, one would see language that would say that the parties are to use the arithmetical average of the three or that if the parties cannot agree the independent is to determine the value or that the parties are to agree to negotiate and come up with a value and spell out the formula. This agreement started to fall apart on this very issue. No one played out "what if" this matter did not close in the 60 days contemplated in the contract. That is exactly what has happened here. Absent a specific provision that the rental payment should be some part mortgage payment the court will not adopt that reasoning. In addition, what the percentages of the payment that should be credited and how it should be determined has not been proven to this court by a fair preponderance of the evidence. Accordingly, the issue has not been proven by the plaintiff, and no credit for the rental payments are given.
In the defendant's claim for relief, the orders requested are: 1) that the plaintiff sign the real estate contract, 2) that the sale price be set. That the closing take place within ten days and that all rent paid is to be construed as rent and not as a credit against the purchase money mortgage. All of these issues have been addressed in this decision. The plaintiff has claimed the following prayers for relief:
1. That the court determine the market value, which it has done. CT Page 1691
2. A credit be given against the sales price of 20% pursuant to paragraph 4(a)(1) of the contract. This has been done.
3. That all rent paid be credited against the purchase price. This the court has rejected.
4. That the plaintiff be awarded a credit of $5,137.00. This the court has rejected to amount only and has ordered $4,500.00.
5. The closing will take place within ten days of the hearing. By agreement this court has ordered sixty days for a closing.
6. That the court approved the contract mortgage and note. This the court has done.
7. That the court award attorney's fees and costs. Attorney's fees are denied. Statutory costs are awarded to the plaintiff.
All of those issues have been addressed herein.
So ordered.
KARAZIN, J.