# PILOT'S POINT MARINA, INC. *v.* TOWN OF WESTBROOK
## (AC 30679)

Flynn, C. J., and Alvord and Foti, Js.

Argued December 1, 2009—officially released March 2, 2010

*John S. Bennet,* for the appellant (defendant).

*David L. Weiss,* for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, the town of Westbrook, appeals from the judgment of the trial court reducing the property tax assessment levied against the plaintiff, Pilot's Point Marina, Inc. The defendant claims that the court improperly determined the fair market value of the property. We agree in part.

The subject property, one of New England's largest marinas, is located at 63 Pilot's Point Drive in Westbrook. All parties agree that the property is being used for its highest and best use. It derives income from slip rentals, summer and winter boat storage, and the rental of industrial, commercial and residential building space. On October 1, 2006, the assessor for the town of Westbrook valued the property at $19 million. The property value and corresponding assessment[1] were affirmed by the Westbrook board of assessment appeals, and the plaintiff applied to the Superior Court for a reduction pursuant to General Statutes § 12-117a.[2] As required, the court reviewed the plaintiff's claim de novo. See *Aetna Life Ins. Co.* v. *Middletown,* 77 Conn. App. 21, 26, 822 A.2d 330, cert. denied, 265 Conn. 901, 829 A.2d

[1] Pursuant to General Statutes § 12-62a (b), the assessment represents 70 percent of the fair market value of the property.

[2] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application . . . with respect to the assessment list . . . to the superior court for the judicial district in which such town or city is situated . . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . ."

419 (2003). It heard testimony and received documentary evidence from both parties' appraisers and rendered judgment in favor of the plaintiff. Using the income capitalization method outlined in General Statutes § 12-63b (a),[3] the court found the fair market value of the property to be $17,127,452.[4] On appeal, the defendant claims that the effective gross income (EGI) of the property was calculated improperly, and, as a result, its fair market value should be increased.

Our review of the court's determination in a tax appeal is limited. "[W]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine [if] it is legally correct and factually supported." (Internal quotation marks omitted.) *Ress* v. *Suffield*, 80 Conn. App. 630, 632, 836 A.2d 475 (2003), cert. denied, 267 Conn. 920, 841 A.2d 1191 (2004). We will reverse the decision only if it is clearly erroneous. Id. "A finding of fact is clearly erroneous when there

---

[3] General Statutes § 12-63b (a) provides in relevant part: "The assessor or board of assessors in any town, at any time, when determining the present true and actual value of real property as provided in section 12-63, which property is used primarily for the purpose of producing rental income . . . shall determine such value on the basis of an appraisal which shall include to the extent applicable with respect to such property, consideration of each of the following methods of appraisal: (1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property. . . ."

[4] To determine the fair market value using the income capitalization method, the court calculated the effective gross income of the property, subtracted the associated operating expenses and divided the result by the capitalization rate.

Both parties agreed that the income capitalization method was the only viable approach for calculating the property's value. They also agreed to operating expenses of $3,490,363 and a capitalization rate of 11.5 percent. Consequently, the only point of contention was the effective gross income generated by the property.

is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

The defendant first claims that the court improperly failed to include the income generated by the property through summer boat storage in its EGI calculation. We agree. A careful review of the court's decision indicates that although it determined that the property generated $1,611,042 through winter *and summer* boat storage, it failed to include $102,192 of summer storage income in its final EGI calculation. The court articulated its omission by explaining that it was aware of the income generated through summer storage but chose to disregard it because most marinas do not offer summer storage, and, therefore, the summer storage income realized by the plaintiff was not representative of the market.

Pursuant to § 12-63b (b),[5] the court is required to consider both market rent and actual rent when determining fair market value using the income capitalization method. See also *First Bethel Associates* v. *Bethel,* 231 Conn. 731, 740, 651 A.2d 1279 (1995) ("the statute requires that, in determining a property's 'market rent,' the assessor and, therefore, the court, in determining the fair market value of the property, must consider *both* [1] net rent for comparable properties, and [2] the net rent derived from any existing leases

[5] General Statutes § 12-63b (b) provides in relevant part: "For purposes of [the income capitalization method] and, generally, in its use as a factor in any appraisal with respect to real property used primarily for the purpose of producing rental income, the term 'market rent' means the rental income that such property would most probably command on the open market as indicated by present rentals being paid for comparable space. In determining market rent the assessor shall consider the actual rental income applicable with respect to such real property under the terms of an existing contract of lease at the time of such determination."

on the property" [emphasis in original]).[6] Moreover, "if the property is devoted to the use for which it is best adapted and is in a condition to produce or is producing its maximum income, the actual rental is a very important element in ascertaining its value." *Federated Dept. Stores, Inc.* v. *Board of Tax Review*, 162 Conn. 77, 83, 291 A.2d 715 (1971). Consequently, in light of the actual income generated by the property through summer boat storage, the court's failure to include any summer storage income in its final EGI calculation was improper.

The defendant next claims that the court improperly accepted the plaintiff's appraisal methodology and failed to consider nearly 9000 square feet of rentable building space when it calculated landside EGI.[7] We disagree. "The process of valuation at best is a matter of approximation." (Internal quotation marks omitted.) *First Bethel Associates* v. *Bethel*, supra, 231 Conn. 738. To ascertain the true and actual value of the taxpayer's property, the court must weigh "the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and [its] own general knowledge of the elements going to establish value . . . ." (Internal quotation marks omitted.) *Aetna Life Ins. Co.* v. *Middletown*, supra, 77 Conn. App. 26. In doing so, it has "the right to accept so much of the expert testimony and the recognized appraisal methods which are employed as it finds applicable." (Internal quotation marks omitted.) *First Bethel Associates* v. *Bethel*, supra, 741.

---

[6] The plaintiff's counter argument that § 12-63b only applies to assessors and is not binding on the court is without merit.

[7] The court calculated total EGI of the property by determining how much income it produced from "waterside" and "landside" operations. To determine waterside EGI, the court considered income generated from slip rentals and summer and winter storage. To determine landside EGI, it considered income generated though rentable building space.

A review of the record indicates that the court found credible and chose to accept the calculation of landside EGI put forward by the plaintiff's appraiser. Although the plaintiff's appraiser did testify that his report omitted some square footage, the defendant did not submit any evidence to prove that the omitted square footage had any effect on the overall value of the property. Moreover, the defendant's appraiser testified that the actual square footage used by both parties to determine landside EGI was "pretty much identical." Neither party attributed income to 106,000 square feet of building space as now urged by the defendant.[8] Accordingly, the record contains support for the court's finding.

Although we conclude that the trial court properly accepted the plaintiff's calculation of landside EGI, we conclude that the trial court's failure to include summer storage income in its final EGI calculation was improper and that the matter must be remanded for a redetermination of the fair market value of the property.

The judgment is reversed and the case is remanded for a redetermination of the true and actual value of the property for assessment purposes consistent with this opinion.

In this opinion the other judges concurred.

---

[8] The defendant's appraiser attributed income to a total of 95,102 square feet of building space, and the plaintiff's appraiser attributed income to a total of 91,053 square feet of building space. To the extent that the defendant claims for the first time on appeal that 106,000 square feet of building space generates income for the property, its claim is unreviewable. See *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 797–98, 967 A.2d 1 (2009).